## No. 16,141.

BEGOLE AIRCRAFT SUPPLIES, INC. *v.* PACIFIC · AIRMOTIVE
CORPORATION.
(212 P. [2d] 860)

Decided December 5, 1949.

·Mr. L. BERNARD DAVIS, Messrs. ROEPNACK & PINE, for
plaintiff in error.

Mr. WALTER E. SCHWED, Mr. HERBERT J. NEWCOMB, for
defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the
court.

PLAINTIFF in error, a Colorado corporation, filed its

complaint in damages against the defendant in error, a California corporation for violation of the terms of a written agreement between the two corporations and for unlawful termination and repudiation by the defendant corporation of the written agreement. Service was made on one Nicholson, a dealer-sales manager of defendant corporation, while he was in Denver for the purpose either of collecting delinquent money owing the California corporation by plaintiff or obtaining an assignment of a sufficient amount of plaintiff's stock of merchandise to secure payment of the account.

The defendant corporation, to which we will refer as Pacific company, filed its motion to quash the service on the ground that it was not "doing business" in the state of Colorado; was not subject to service of process in the state of Colorado; and that the purported service upon Nicholson was not sufficient, for the reason that Nicholson was only a sales manager of the corporation and not authorized to accept or receive service of summons in the state of Colorado for the corporation. The motion to quash the summons was sustained on the ground that the defendant company was not "doing business" in the state of Colorado; however, the court did, without specific finding, say that if it had determined that the defendant company was "doing business" in the state of Colorado, it would hold the service on Nicholson to be sufficient.

Plaintiff in error, hereinafter called Begole company, specifies error, which, in substance, is that Nicholson was the proper person to be served with summons; that the Pacific company was doing business in the state of Colorado of such a nature as to subject it to the jurisdiction of the Colorado courts; and that the court erred in sustaining the motion to quash.

The multitudinous attempts to define what is "doing business," in like cases, has resulted in much confusion and the phrase seems not to have a universal meaning. However, there is a distinction between "doing busi-

ness" by a foreign corporation such as would subject it to the jurisdiction of courts not of its domicile, and "doing business" of the character that would subject it to the power of the state to impose regulations upon its activities.

■ In view of the trial court's statement that it was unnecessary to determine whether or not Nicholson was a proper person upon whom service could be made, however, if it had determined that Pacific company was "doing business" in Colorado the service would be upheld, counsel for Pacific company has elected not to file cross specifications on this point. Since the intimated ruling was favorable to Begole company, plaintiff in error, its argument offered on this point is useless, and, as we view the matter, this question is controlled by the lone, broad proposition and determined by an answer to the question: Was Pacific company doing such business in the state of Colorado as would subject it to the jurisdiction of the Colorado courts?

The complaint, containing a verbatim copy of the contract between the parties hereto, and all other pleadings and affidavits consume 163 folios of the record, and about forty exhibits, being largely letters and telegrams between the parties in performance of the contract, presents such a voluminous record that no effort is here made to detail the contents thereof, or any of the evidence adduced in a three-day hearing before a trial court whose findings disclose a patient and painstaking consideration of all the matters presented and whose findings we should hesitate to disturb.

To consider whether or not the judgment has sufficient support in the record, we briefly enumerate the following important facts: Pacific company, a California corporation, with its principal offices there, on August 22, 1946, entered into a written contract with Begole company, a Colorado corporation, which was considered by both parties as a "distributor contract." The principal business of Pacific company was the sell-

ing, manufacturing and distributing to the public, and to dealers, airmotive parts, supplies and accessories throughout the United States and some foreign countries. Prior to the date of the contract, Archie Begole, later president of Begole company, acted as a distributor in Colorado for the Pacific company under an oral contract. Later Begole company was incorporated and had a place of business at 1536 Market street, Denver, from which it operated and conducted sales and distribution of airmotive parts and supplies in Colorado and through its own dealers.

The written contract was an agreement between the parties whereby Pacific company agreed to sell to Begole company, and Begole company agreed to purchase from Pacific company, all of its requirements for airmotive parts, supplies and accessories distributed by or through Pacific company, and not to deal in products competitive to Pacific company; all orders were to be in writing and subject to acceptance by the Pacific company; payment to be according to Pacific company's written terms of payment in effect at the time of any shipment, and all deliveries by Pacific company to be F. O. B. at the point of shipment; Pacific company reserved the right to decline deliveries except for cash and the right to cancel the agreement upon failure of Begole company to make payment on any due date; Begole company agreed to display signs furnished by Pacific company for advertising purposes, title to such material to remain in Pacific company to be returned on termination of the contract; Pacific company agreed not to appoint further distributors in Colorado and other parts of the territory designated; the agreement is not an appointment of Begole company as agent and Begole company is given no powers to act for, or bind, Pacific company in any respect; provision for termination of contract for default.

A subsequent letter agreement was entered into for the purpose of enabling Begole company to take care

of an existing default under the contract on account of past due indebtedness for merchandise by Begole company obtaining the services of a bonded warehouse to take over a sufficient part of its inventory to allow payment of all the indebtedness to the Pacific company; and it was further agreed that this warehousing arrangement was not to affect the terms and conditions of the original distributor contract, and that Begole company was to consummate such arrangement within thirty days, or Pacific company might thereafter repossess sufficient quantities of merchandise to discharge the indebtedness. Negotiations having failed concerning the warehouse proposition and Begole company not having liquidated its indebtedness to Pacific company, on April 12, 1947, the Pacific company, pursuant to the terms of the contract, through its dealer-sales manager, Norman Nicholson, who had come to Denver relative to an adjustment, demanded, in writing, the payment of this indebtedness in the sum of $9,237.99, or the delivery of a sufficient amount of merchandise, at cost, to liquidate the indebtedness. On the same day, and shortly after the demand was served on Begole company, this action was instituted by the service of a summons on Norman Nicholson then in Denver.

A study of the original contract of August 22, 1946, discloses that it specifically defines the status of the parties and that it was declared to be a contract of purchase and sale with special grant of exclusive territory provisions and that the merchandise sold to the Begole company in California F. O. B. and that the title is vested in Begole company; the evidence discloses that the activities of the Begole company in its granted territory were solely on its own behalf and not as an agent for the Pacific company, and that the Pacific company did not engage in doing business in Colorado directly or through any agency of the Begole company, and its only relationships were incidental to the vendor and

vendee relationship as set out and defined in the contract.

No third parties are involved, and the contract, which was terminated by Pacific company on April 12, 1947 by refusing to extend further credit to Begole company, and demanding possession of sufficient property to discharge the indebtedness and by formal notice of termination, was a contract by which both parties expected to derive benefit and was voluntarily made. This contract and the terms thereof is binding on the courts as to the rights of the parties. The clear intention of the parties was expressed by the language of the contract, and, therefore, the character of the contract was established. The actions of the parties under the contract prior to the controversy which has arisen indicate that the contract was intended to be nothing more or less than a purchase and sales contract from one distributor to another and in no sense the creation of an agency. Such is our view of the pleadings, exhibits and the evidence, which amply sustains the findings of the trial court that the Pacific company was not engaged in "doing business" in Colorado in a way that would bring it within the jurisdiction of the Colorado courts.

After considering the facts, the trial court aptly quoted from the case of *Butler Bros. Shoe Co. v. United States Rubber* Co., 156 Fed. 1, wherein the court, in speaking of authorities on the question of "doing business" said: "They are numerous, various, and conflicting, and any attempt to reconcile them must fail." The trial court further said, "authorities all agree, however, on one point, namely, that each case depends on its own facts," citing *People's Tobacco Co. v. American Tobacco* Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587.

In a similar case, *Rogers v. Mountain States Royalties,* 116 Colo. 455, 182 P. (2d) 142, Mr. Justice Jackson, speaking for the court, said, that from a study of the cases of this and other jurisdictions, "It seems that

some of the cases are resolved by leaving the matter in the sound discretion of the trial court." This we are content to do in the instant case.

The judgment, therefore, is affirmed.

MR. JUSTICE HAYS dissents.