No. 18,705.

HIBBARD, SPENCER, BARTLETT & Co. *v.* DISTRICT COURT OF EL PASO COUNTY, ET AL.

(332 P. [2d] 208)

Decided November 24, 1958.

Messrs. BENNETT & HEINICKE, for petitioner.

Messrs. MURRAY, BAKER & WENDELKEN, for respondents.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

WE will refer to the parties as they appear in the trial court where the petitioner is defendant, and Paul N. Seiler, one of the respondents, is plaintiff.

The case involves but one question: Was the defendant, an Illinois corporation, at the time alleged in the complaint and at the time it was served with summons in Colorado, doing business in this state so as to subject it to the process of the courts of this state?

The trial court, on hearing a motion to quash the summons, held that the defendant corporation was doing business in this state and was present here for the purpose of personal service upon it, and denied the motion to quash. Defendant is here seeking relief in the nature of prohibition to prevent the trial court from exercising jurisdiction over it and from proceeding to trial on the issues.

Plaintiff was a salesman for the defendant company under a written contract of employment. Alleging certain sums due him for commissions on sales made by him during the life of the contract, plaintiff, in March, 1956, brought suit in the district court of El Paso County. Summons was issued and served on a stockholder of the defendant corporation in El Paso County. The defend-

ant concedes that if it was "present" in Colorado the service was good pursuant to Rule 4 (e) (5), R.C.P. Colo.

The evidence of the activities of the defendant corporation in Colorado by and through its salesmen is not in substantial conflict. Defendant corporation had been selling its products through salesmen, at one time as many as five, for fifty years. The salesmen were employed to call on customers, carrying samples and a catalog of defendant's hardware line. The customer ordered from either viewing the samples or from a description in the catalog, and the salesmen wrote up the order and mailed it to the company. The salesmen expedited the delivery of the goods purchased by the customers, determined the means of transportation from the factory to the purchaser, and frequently would prod the transportation company in order to expedite the shipment and get prompt delivery. On occasion they assisted in the collection of slow or delinquent accounts on direction by letter from defendant. Salesmen solicited new accounts on their own initiative, obtained financial statements of customer ratings; at times picked up over-stocked or over-ordered merchandise from one dealer and sold it to another, sometimes on their own initiative and sometimes under order and direction of a regional sales manager. Allotments were made to salesmen who were authorized to place them at their discretion. Samples were sent to the salesmen who in turn could sell the samples to customers after they had served their purposes. Samples were charged out to the salesmen. When sales were made, credit was given to the salesman's account and a charge made to the customer by the company. Merchandise was shipped into Colorado for display purposes in the name of the company. After display in hotels at conventions the merchandise was shipped back to the company or sold. The contracts of employment in evidence required the salesmen to devote their entire time, skill and attention to their employment and pro-

hibited them from selling other lines or becoming interested in other businesses. Defendant's business in the state of Colorado was substantial, approximating $200,000 per annum.

Defendant's contention was that much of the activity of the salesman as enumerated above had been curtailed in the last year of plaintiff's employment so that plaintiff had not been called upon to make any collections, had no samples, and had been using only the catalogs. The practice of making cash adjustment with customers for faulty merchandise or short orders up to the maximum of $2 per adjustment was continued. Plaintiff, while admitting that these activities on his part had been curtailed, contends that fundamentally the operation did not change and that in the year in which suit was brought the company was selling through at least one salesman under identical contract who was under bond to the company and had identical authority as under the contracts of previous years, although the company may not have asked him specifically to make collections, shift consignments, or sell merchandise direct from sample supplies.

Question to be Determined:

*Under the circumstances presented here, did the court abuse its discretion in finding and holding that defendant was doing business in the state of Colorado so as to make it amenable to process?*

The question is answered in the negative.

In numerous cases in the past on an identical question, wherein the trial court has been both sustained and overruled, this court has consistently agreed with the weight of authority on one. point: that each case depends on its own facts. *Begole Supplies v. Pacific Corp.*, 121 Colo. 88, 212 P. (2d) 860; *Butler Bros. Shoe Co. v. United States Rubber Co.*, 156 Fed. 1; *People's Tobacco Co. v. American Tobacco Co.*, 246 U.S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587.

In a case nearly similar in facts to those in the case

before us, the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, said:

" * * * To say that the corporation is so far 'present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. * * * Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. * * *

" 'Presence' in the state in this sense has never been doubted when the *activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on,* even though no consent to be sued or authorization to an agent to accept service of process has been given. * * * " (Emphasis supplied.)

In Colorado our decisions have given approval to resolving such cases by: "(1) Leaving the matter in the sound discretion of the trial court; (2) distinguishing between those cases where merely the internal affairs of the corporation are involved and those cases where the corporation has had transactions with third persons; and (3) considering the equities of the case." *Rogers v. Mountain States Royalties,* 116 Colo. 455, 182 P. (2d) 142.

Actually the courts under the class of cases in (1) above have ruled that the question of what constitutes doing business is a fact to be determined as any other fact. *Electrical Equipment Company Inc. v. Daniel Hamm Drayage Co.,* 217 F. (2d) 656. So if the evidence supports the finding of the trial court we will not disturb

it. The absence of exact measures for the determination of what constitutes doing business in a state for the purpose of becoming amenable to the processes of the courts of the state, and the lack of uniformity in the discussions of the courts taken together with the opportunity of the trial court to observe the witnesses and to weigh their testimony all lend strength to the wisdom of leaving the matter to the trial court. On the testimony presented, it cannot be said that the learned trial judge exceeded his jurisdiction or abused his discretion in holding that the company was doing business in this state.

Accordingly, the rule is discharged.