Josiah Lawrence FOCHT, Plaintiff,

v.

SOUTHWESTERN SKYWAYS, INC., Defendant and Third-Party Plaintiff,

v.

CESSNA AIRCRAFT COMPANY, Third-Party Defendant.

Joseph Kenmuir FICKLIN, Jr., Plaintiff,

v.

SOUTHWESTERN SKYWAYS, INC., Defendant and Third-Party Plaintiff,

v.

CESSNA AIRCRAFT COMPANY, Third-Party Defendant.

Civ. A. Nos. 7704, 7861.

United States District Court
D. Colorado.

Aug. 5, 1963.

Forest E. Clark, Jr., Denver, Colo., for plaintiffs.

Yegge, Hall & Shulenburg, Edward C. Eppich, Denver, Colo., for defendant and third-party plaintiff.

Weller, Friedrich & Hickisch, W. Robert Ward, Denver, Colo., for third-party defendant.

DOYLE, District Judge.

Third party defendant Cessna Aircraft Company has moved to quash the return of service upon the ground that it was not doing business in the State of Colorado at the time that summons was served; and secondly, that the attempt to obtain service on it by serving a shareholder was not valid. The identical questions are present in both cases, thus this determination will apply to Civil Action No. 7704 and No. 7861.

The original action was filed by plaintiffs who alleged that they were injured in a helicopter crash near Gunnison, Colorado. At the time they were passengers in a craft which was owned and operated by the defendant, Southwestern Skyways, Inc. On motion of the latter, authorization was granted to bring in Cessna as a third party defendant.

The allegation in the third party complaint is that Cessna sold the helicopter to Southwestern Skyways and that the craft was negligently manufactured; that there was a breach of express and implied warranties, all of which was the ultimate cause of the injuries to the plaintiffs. The particular service which is challenged was made upon Charlene Clinton, a Cessna stockholder who resides in Denver. This service was explained by the attorney for Skyways as having been necessitated by the fact that he could find neither officer nor agent of Cessna within Colorado.

The *first* question is whether Cessna was doing business in Colorado and was thus subject to process of any kind. It is, of course, fundamental that the law of the state in which the corporation is alleged to be doing business applies. See Walker v. General Features Corp., (10 Cir., 1963) 319 F.2d 583; Steinway v. Majestic Amusement Co., (10 Cir., 1949) 179 F.2d 681, 18 A.L.R. 2d 179. The Colorado Supreme Court has followed the same tests in the determination of questions of the nature here presented as have the federal courts. See Bay Aviation Services Co. v. District Court, Colo., 370 P.2d 752 (1962); Colorado Builders' Supply Co. v. Hinman Bros. Construction Co., 134 Colo. 383, 304 P.2d 892. The definitive case is, of course, the decision of the Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

While there is a great body of law on various aspects of this subject, it is nevertheless essential to consider and test each case upon its own facts in the light of the decisions. The Cessna Aircraft Corporation is a Kansas corporation which has its principal place of business in Wichita. It is engaged in the production and sale of aircraft, aircraft parts and accessories. It maintains that it is not a citizen or resident of the State of Colorado; that it has never qualified under the laws of Colorado to do business, and it does not have an agent to accept service of process in the State of Colorado. It admittedly sells its products to persons in Colorado, but contends that its relationship to Colorado residents is that of buyer and seller.

According to Cessna, it sells its planes to a distributor, which in turn sells its planes to a dealer selected by the distributor; that these dealers in turn serve the buying public. Cessna's distributor in Colorado is Grant-Aero, Inc., of Denver. Its distributorship includes all of Colorado with the exception of a few counties. The distributor, in turn, appoints, contracts with and sells to retail dealers within the territory. According to Cessna, no control is exerted by it over the retail dealers. However, a printed dealer contract which is in the file for use by the distributor in his relationship with dealers, indicates possible indirect influence on dealers by Cessna. Orders for equipment are transmitted through the distributor to Cessna's plant in Wichita. Cessna may accept or reject such offers. If it accepts them, delivery is completed at Wichita and the craft is flown from Wichita by the distributor or its agent. Orders for parts or accessories also go through the distributor and are shipped by Cessna on an open account, or c.o.d. basis. This arrangement is cited by Cessna to show that title passes in Kansas, whereby there can be no agency relationship within Colorado.

Cessna has regional representatives who assist the distributor and some times also assist the retail dealer. These representatives promote sales and offer technical assistance. The deposition of Mr. Lou Clinton, who is a director of the distributor here and is also President of Clinton Aviation Company, retail dealer, sets forth that Cessna's regional manager and service manager call at his place of

business three or four times a year. A substantial part of Clinton's business is the sale of Cessna products.

The distributor agreement sheds light on the relationship between Cessna and Grant-Aero. Under it the distributor is required to purchase and maintain one aircraft of each of Cessna's eight models for demonstration purposes. The distributor is required to purchase and maintain sales promotion supplies and participate in these promotional efforts. He must follow Cessna procedures in submitting orders. Payment plans must be approved by Cessna. Dealers must submit orders to the distributor in accordance with forms of Cessna. The distributor must require its dealers to maintain adequate service departments and to absorb the costs of servicing Cessna's warranties. Dealers must also purchase tools from Cessna. Cessna also has an interest in the financial structure and in the operating capital of distributor. These must be maintained in accordance with Cessna's standards. The accounting system of the distributor must be in accordance with that prescribed by Cessna and the records are subject to examination by Cessna. Various kinds of reports as to dealer inventory and sales must also be prepared by the distributor. Distributor must investigate and process complaints. Upon termination, the distributor must or may sell to Cessna all unsold equipment. Cessna has a factory school in Wichita and dealers are encouraged to send at least one person to the school each year.

The above facts have been detailed as an aid in answering the question whether Cessna is doing business in the State of Colorado.

The International Shoe case teaches that in order for a company to do business it must have had certain minimum contacts with the state so as to satisfy the standard declared in that case of not offending "traditional notions of fair play and substantial justice." International Shoe also speaks of necessity for activity which is "continuous and systematic" and "substantial," pointing out that mere "casual" or "isolated" events fall short of doing business.

Analysis of the present problem requires a consideration of the acts of the prospective defendant not only from a quantitative standpoint, but also from a qualitative, or depth approach. In other words, it is not merely a matter of the frequency of contacts, it is also the extent of control that a corporation exerts in a state by means of devices such as the distributor agreement which has been referred to. See La Porte Heinekamp Motor Co. v. Ford Motor Co., 4 Cir., 24 F.2d 861; Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., 1 Cir., 304 F.2d 915; Begole Aircraft Supplies v. Pacific Airmotive Corp., 121 Colo. 88, 212 P.2d 860 (Colo., 1949); Abel v. Albina Engine & Machine Works, (10 Cir., 1960) 284 F.2d 510.

Begole Aircraft Supplies is in many ways similar to the situation at bar in that there was a distributorship agreement there together with delivery in California. However, in the present case the relationship between Cessna and the distributor was far closer than that which obtained in the Begole case. The control and regulation which is here present did not appear in Begole; here, we find that Cessna representatives call upon the distributor frequently; they regulate the manner of doing business, the scope and extent of sales promotion, prescribe the accounting system, the tools to be employed, and regulate the business of the distributor in numerous other ways. It is not possible, therefore, to look at this record realistically and to hold that the arrangement is simply that of vendor-vendee. Where, as here, the manufacturer regulates virtually every detail of a local distributor's business, he can not come into court and say that the contacts were minimal and that this was merely a sales relationship. To be sure, it is a sales relationship, but it is much more. In fact, it is impossible to imagine an agency relationship which would demand more from the agent than Cessna demands from its distributor. This factor serves to distinguish also the Colo-

rado Builders' Supply Company, supra, which is also relied upon by Cessna.

 It is concluded, therefore that, giving effect to the substance rather than to form, Cessna was doing business in Colorado, and the present formal and legalistic effort to paint this picture as a seller-purchaser agreement must fail. Cf. Curtis Publishing Co. v. Cassel, (10 Cir., 1962) 302 F.2d 132.

 We now turn to Cessna's second point that the service upon the shareholder was ineffectual:

Rule 4(d) (7) of the Federal Rules of Civil Procedure, in providing the manner of service of process upon a foreign corporation, declares:

" * * * it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

Rule 4(e) (5) of the Colorado Rules of Civil Procedure authorizes service:

"Upon a private corporation, by delivering a copy thereof to any officer, manager, general agent, or agent for process. If no such officer or agent can be found in the county in which the action is brought, such copy may be delivered to any stockholder, agent, member or principal employee found in such county. If such service be upon a person other than an executive officer, the secretary, general agent, or agent for process, then the clerk shall mail a copy thereof to the corporation at its last known address, at least 15 days before default is entered."

Cessna challenges the particular manner of service because of the lack of likelihood that a shareholder would communicate with it. It cites General Benefit Ass'n v. Bell, 105 Colo. 133, 95 P.2d 816 (1939). Rule 4(e) (5), Colorado Rules

of Civil Procedure which we are now considering, was not applicable in that case. The Colorado Supreme Court has not condemned this manner of service of process as being unfair or as failing to give notice. See Hibbard, Spencer, Bartlett & Co. v. District Court, 138 Colo. 270, 332 P.2d 208 (1959); Colorado-Iron Works v. Sierra Grande Mining Co., 15 Colo. 499, 25 P. 325.

Cessna's contention must be, in view of the foregoing, rejected. It is

Ordered that the motion to quash be, and the same is hereby denied.