No. 21128.

D. P. BOLGER *v.* DIAL-A-STYLE LEASING
CORPORATION, ET AL.
(409 P.2d 517)

Decided January 10, 1966.

B. F. NAPHEYS, JR., B. F. NAPHEYS, III, for plaintiff in error.

ISAACSON, ROSENBAUM, GOLDBERG & MILLER, STEPHEN T. SUSMAN, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THE sole question presented for our determination on this writ of error is whether the defendants in error, two New York corporations, were "transacting business" in Colorado of a sufficient nature to make them amenable to the civil jurisdiction of our courts through the use of substituted service of process on foreign corporations under 1960 Perm. Supp., C.R.S., Section 31-35-19(3). We shall hereafter refer to the parties by name or as plaintiff and defendants.

Bolger filed an action against Dial-A-Style Leasing Corporation, a wholly owned subsidiary, and its parent company, Beauty Industries Incorporated. He sought a rescission and damages for alleged false representations arising out of a contractual relationship entered into between the plaintiff and Dial-A-Style on February 8, 1963 whereby Bolger became the latter's "agent" in promoting and selling its services and equipment to beauty parlors in Colorado.

Service of process was obtained on the two defendants in the statutory manner. Thereafter, the defendants made a special appearance through their attorneys and moved to set aside and quash the service of process based on affidavits that Dial-A-Style had not transacted sufficient business in Colorado to render it subject to service in this State and that Beauty Industries had not transacted any business here. The trial court granted the motion to quash and improperly, thereafter, dismissed Bolger's complaint without prejudice. It found that service had been made on July 5, 1963 in accordance with the statute, that both defendants were foreign corporations and "That neither * * * has transacted business within the State of Colorado so as to render either or both of them amenable to service of process in Colorado," and that it had no jurisdiction

over these two corporations. By writ of error, Bolger seeks to reverse the judgment. We note, in connection with the above mentioned dismissal of the complaint, that the proper procedure is not to dismiss a complaint because of improper or invalid service of process; the trial court should, in such a case, merely hold the service invalid and allow the action to stand so that the plaintiff can continue to seek proper service. To do otherwise could, for example, prevent the tolling of a statute of limitations or harm a plaintiff in some other manner.

The district court had before it the complaint, the two affidavits of the New York companies and the counter-affidavit of Bolger. A reading of these instruments reveals that both defendants have their principal place of business in New Jersey and that the plaintiff first became acquainted with them through an advertisement which appeared in the Wall Street Journal signed by one Herman Perl, the chairman of the board of Beauty Industries. Bolger contacted Perl's office, and was thereafter called upon in Denver by Arthur J. Waldorf, who admittedly was Dial-A-Style's West Coast representative. Dial-A-Style, a separate corporate entity, appears to be the franchising and servicing company for Beauty Industries.

Bolger's complaint and counter-affidavit show that he was made the sole agent of Dial-A-Style. No other persons were hired in Colorado by either of the defendants. It appears that Bolger was to lease certain cameras and processes to beauty salons in Colorado and to sign the agreements as the *agent* of Dial-A-Style. Copies of the signed leases, which did not require the defendant's prior ratification to become binding, were then sent to the corporation's home office. Title to the machines remained in Dial-A-Style and it was to pay the Colorado taxes thereon. In addition, Dial-A-Style was to supply Bolger with other materials upon request. It appears, however, that at least one billing to plaintiff was made

on Beauty Industries' stationery. Dial-A-Style's affidavit admits the appointment of Bolger as "its sole distributor in Colorado"; that Bolger was required "to lease out certain machines"; and that "pursuant to that (its) agreement" it shipped "three sets of equipment plus miscellaneous supplies" from New Jersey to Bolger in Colorado.

It is asserted that Waldorf had been informed by Bolger's attorney, at the time the franchise agreement was signed, that the defendants would have to qualify to do business in Colorado. In a telephone call at that time this requirement was relayed to the officers and counsel of the two companies in New Jersey. It is alleged that they agreed so to qualify their companies; their promises, however, were never fulfilled.

One further item in the record is that it appears from an exhibit that some public relations work may have been carried on by Beauty Industries in Colorado when it distributed a progress circular printed under its name. The extent of the distribution of this circular is not clear, nor is it clear whether anyone in Colorado except Bolger was exposed to this advertising.

██ Although Dial-A-Style was totally owned by Beauty Industries, the mere presence in Colorado of this wholly owned subsidiary, standing alone, does not in and of itself subject the absent parent corporation to our state's jurisdiction, where the two companies are operated as distinct entities, as appears here. *Canon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336, 45 S. Ct. 250, 69 L. Ed. 634 (1925); *Berkman v. Ann Lewis Shops, Inc.*, 246 F.2d 44, 48 (2d Cir. 1957). We thus conclude that Bolger had the burden of proving the necessary "presence" in Colorado of both companies.

The question of what constitutes sufficient minimal contacts within a particular state so as to hold that a foreign corporation has subjected itself to *in personam* jurisdiction without violating the due process clause under the 14th Amendment of the Federal Constitution

has been developing over the years in decisions of the United States Supreme Court; see, e.g., *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S. Ct. 199, 2 L. Ed.2d 223 (1957); *Hanson v. Denckla,* 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed.2d 1283 (1958).

In *International Shoe, supra,* noting that in order to subject a foreign corporation to a state's jurisdiction, certain minimal contacts in that state are required so that "traditional notions of fair play and substantial justice" are not offended by the bringing of the suit, the court said:

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. *The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state,* a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. * * *" (Emphasis supplied.) And, in *McGee, supra,* the court extended the *International Shoe* case concept to a situation where the only contact by the corporation in the forum state was the assumption of a single insurance contract, which became the subject of the questioned suit. Noting the increasing expansion of commercial transactions in the United States, it was held that that corporation's contact was sufficient to meet the test of due process because the suit was based on a contract which had substantial connection with the state and "It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims."

■ In Colorado, it has been recognized that each case of this type rests upon its own facts; e.g., *Hibbard v. District Court,* 138 Colo. 270, 273, 332 P.2d 208 (1958);

50

*Colorado Co. v. Hinman Bros.*, 134 Colo. 383, 391, 304 P.2d 892 (1956).

 Turning first to the question of Beauty Industries' amenability to substituted service, we hold that the trial court's finding that it lacked jurisdiction over the parent corporation is supported by the record. Bolger alleged that the two defendant companies had common officers and that they carried on certain correspondence with him, but that alone certainly does not prove these were other than two distinct corporate entities, nor does it make Beauty Industries a party to the dealership contract with plaintiff. The "contacts" that Beauty Industries had in Colorado appear to be the advertisement of Dial-A-Style franchises published in the Wall Street Journal which is sold in Colorado; that it allowed at least one of Dial-A-Style's billings to be made on Beauty Industries' stationery; and that it sent one written notice publicizing the beauty aid process in question to Colorado. We agree with the trial court that these are insufficient minimal contacts and that Bolger did not carry his burden of proof as to that company to establish its legal "presence" in Colorado for substituted service.

 We cannot, however, come to the same conclusion as to Dial-A-Style as we do as to the parent company. An examination of the undisputed facts set out in the record shows that this company was "doing business" in Colorado in the sense of at least minimal contacts through Bolger as its agent. He was the sole distributor of its process and products. Cf. *Focht v. Southwestern Skyways, Inc.*, 220 F. Supp. 441 (D. Colo. 1963). Machines, taxable to Dial-A-Style and to which it retained title, plus additional supplies were sent by it to Colorado. Leasing contracts were consummated in Colorado for it through its agent; and it appears that no prior approval by Dial-A-Style was required to make such leases binding. Establishing such a beachhead and retaining open lines of communication, as well as strings of ownership as evidenced by its title, is "doing busi-

ness" within a state. This is so because the activities complained of were not irregular and casual but rather by their nature were continuous and systematic with the claim in question itself being generated by Dial-A-Style's corporate activity in Colorado.

The judgment is reversed with directions to reinstate the complaint as to both parties and to proceed in accordance with the views expressed herein.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE SCHAUER concur.