23CA0983 Sturgell v Holmes 07-11-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0983 City and County of Denver District Court No. 22CV110 Honorable Kandace C. Gerdes, Judge Abade Irizarry and Frank Sturgell, Plaintiffs-Appellants, v. Ryan Holmes, Colorado State Trooper; Harold Johnson, Colorado State Trooper; Colorado State Patrol; Cindi Markwell, Secretary of the Senate; Office of the President of the Senate; Jack Wegert, Sergeant-At-Arms; Stephen Rosenthal, Sergeant-At-Arms; Jon Judson, Sergeant-At-Arms; Dennie G. Hancock, III, Sergeant-At-Arms; Michael Fohrd, Sergeant-At-Arms; James Davis, Sergeant-At-Arms; James Eichman, Sergeant-At-Arms; Roger Pankau, Sergeant-At-Arms; Frank Lombardi, Chief Sergeant-At-Arms; Matthew Flora, Sergeant-At-Arms; and Theodore Abad, Sergeant-At-Arms, Defendants-Appellees. APPEAL DISMISSED IN PART AND JUDGMENT AFFIRMED Division I Opinion by JUDGE TAUBMAN* Welling and Schock, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 11, 2024 Abade Irizarry, Pro Se Frank Sturgell, Pro Se Philip J. Weiser, Attorney General, Amy C. Colony, Senior Assistant Attorney General, Danielle Lewis, Senior Assistant Attorney General, Gregory R. Bueno, 
Senior Assistant Attorney General, Denver, Colorado, for Defendants-Appellees Ryan Holmes, Colorado State Trooper, Harold Johnson, Colorado State Trooper, and Colorado State Patrol The Law Offices of Eric J. Moutz, LLC, Eric J. Moutz, Boulder, Colorado, for Defendant-Appellee Cindi Markwell, Secretary of the Senate Office of Legislative Legal Services, Jeremiah B. Barry, Edward A. DeCecco, Denver, Colorado, for Defendants-Appellees Office of the President of the Senate, Jack Wegert, Sergeant-At-Arms, Stephen Rosenthal, Sergeant-At-Arms, Jon Judson, Sergeant-At-Arms, Dennie G. Hancock, III, Sergeant-At-Arms, Michael Fohrd, Sergeant-At-Arms, James Davis, Sergeant-At-Arms, James Eichman, Sergeant-At-Arms, and Roger Pankau, Sergeant-At-Arms Achieve Law Group, LLC, Jerome A. DeHerrera, Aaron A. Boschee, Denver, Colorado, for Defendants-Appellees Frank Lombardi, Chief Sergeant-At-Arms, Matthew Flora, Sergeant-At-Arms, and Theodore Abad, Sergeant-At-Arms *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023.
1 ¶ 1 In this case regarding an inability to serve process against numerous government officials, plaintiffs, Frank Sturgell and Abade Irizarry, appeal the district court’s judgment dismissing their claims against the Colorado State Patrol, the Office of the President of the Senate, thirteen law enforcement officers, and Cindi Markwell, the Secretary of the Colorado Senate. We dismiss the appeal in part and otherwise affirm. I. Factual Background ¶ 2 One afternoon in March 2020, plaintiffs entered the Colorado State Capitol building with a “box of lawsuits” that they intended to serve on various members of the Colorado General Assembly.
1 They alleged in their complaint that, in three separate incidents, several law enforcement officers of the Colorado State Patrol and Capitol Sergeants-at-Arms prevented them from serving civil process on legislators in the House and Senate chambers that day. ¶ 3 The first incident took place shortly after plaintiffs entered the Capitol. When they tried to serve their complaint to a legislator, the Colorado State Patrol intervened and asked plaintiffs to show their 1 Sturgell was, allegedly, the plaintiff in the lawsuits, and Irizarry was acting as his “process server.” 
2 identification, which they refused to do. Trooper Johnson and Sergeant Holmes “placed plaintiffs under arrest and detention” until the Denver Police Department arrived and “allowed [plaintiffs] to carry on.” Based on this incident, plaintiffs claimed that Trooper Johnson, Sergeant Holmes, and the Colorado State Patrol (collectively, the State Patrol Defendants) violated plaintiffs’ “right to serve a lawsuit,” right to petition the government for redress of grievances, and right to be free from unreasonable government searches. They also claimed that the State Patrol Defendants “fail[ed] to train to protect rights.” ¶ 4 The second incident took place about an hour later, when plaintiffs entered the House chamber. According to the complaint, a sergeant-at-arms told plaintiffs to leave but that they could serve lawsuits at the legislators’ offices. Based on this incident, plaintiffs claimed that eleven sergeants-at-arms and the “Office of the Sergeant-At-Arms” (collectively, the Sergeant-at-Arms Defendants) unlawfully obstructed their ability to serve process on legislators. They also asserted a claim of “failure to protect or train to protect rights” against the Sergeant-at-Arms Defendants and Markwell. 
3 ¶ 5 The third incident occurred about an hour later. According to the complaint, “As [plaintiffs] walked to the Senate Chamber with their box filled with lawsuits, they noticed [the] door was locked,” and “[t]he Sergeant-At-Arms assigned to the door . . . refused to acknowledge” them. Based on this incident, plaintiffs claimed that the Sergeant-at-Arms Defendants violated their statutory and constitutional “right to serve a lawsuit”; were not properly trained in serving lawsuits; and were told to disobey the laws, duties, and procedures attendant to their duties. II. Procedural Background ¶ 6 The district court quashed service of the complaint as to the Office of the President of the Senate and eight Sergeant-at-Arms Defendants (collectively, the Improperly Served Defendants). In two separate orders, the district court dismissed plaintiffs’ claims as to the State Patrol Defendants and the remaining Sergeant-at-Arms Defendants under C.R.C.P. 12(b)(1) and, in the alternative, under C.R.C.P. 12(b)(5). In a third order, it dismissed plaintiffs’ claims against Markwell under C.R.C.P. 12(b)(5). 
4 III. Discussion ¶ 7 We conclude that we lack jurisdiction to review the district court’s order quashing service as to the Improperly Served Defendants. As to the remaining defendants, we affirm the district court’s orders dismissing plaintiffs’ claims. A. Quashing of Service ¶ 8 The Office of the President of the Senate and Sergeant-at-Arms Defendants filed a limited appearance and motion to quash service of process. They alleged that Nellie Moran — whom plaintiffs’ affidavit of service had named as the person served on behalf of the Office of the President of the Senate — was not in the building on the date of alleged service, and that service upon the Office of the President of the Senate was therefore invalid.
2 They further alleged that plaintiffs had not validly served the Sergeant-at-Arms Defendants by leaving the complaint and summons with Markwell because she was not the managing agent for any of those defendants. 2 According to Moran’s affidavit attached to the motion to quash, she is the Chief of Staff of the Colorado Senate Democrats and “has never been the secretary of the President of the Senate nor of the Office of the President of the Senate.” 
5 ¶ 9 The district court granted the motion to quash service of process with respect to the Office of the President of the Senate and the sergeants-at-arms who worked for the House (Wegert, Rosenthal, Judson, Hancock, Fohrd, and Davis), concluding that “[s]ervice through Ms. Markwell was ineffective for these individuals.” It also quashed service as to Eichman and Pankau because they were no longer employed as sergeants-at-arms at the time of the alleged service and therefore could not be served through Markwell. However, the court denied the motion as to the Senate sergeants-at-arms who remained employed at the time of service — Lombardi, Flora, and Abad (collectively, the Senate Sergeants-at-Arms Defendants) — noting that even though Markwell was not the “managing agent” of those defendants, she was their supervisor and could be served on their behalf under C.R.C.P. 4(e)(1). ¶ 10 When a defendant moves to quash service, the plaintiff has the burden to establish “by competent evidence all facts essential to jurisdiction.” Harvel v. Dist. Ct., 166 Colo. 520, 523, 444 P.2d 629, 631 (1968). Whether personal service has been properly effectuated is a question of fact to be resolved by the trial court. Stubblefield v. 
6 Dist. Ct., 198 Colo. 569, 572, 603 P.2d 559, 561 (1979). “[A]n order quashing a purported service of process is not tantamount to a judgment of dismissal . . . .” Hoen v. Dist. Ct., 159 Colo. 451, 455, 412 P.2d 428, 430 (1966). Thus, such an order “is not a final order that is immediately appealable.” Willhite v. Rodriguez-Cera, 2012 CO 29, ¶ 8, 274 P.3d 1233, 1236 (citing Hoen, 159 Colo. at 455, 412 P.2d at 430); see Cranmer v. Olin Ski Co., 35 Colo. App. 371, 372, 533 P.2d 501, 501 (1975). Rather, “the trial court should, in such a case, merely hold the service invalid and allow the action to stand so that the plaintiff can continue to seek proper service.” Bolger v. Dial-A-Style Leasing Corp., 159 Colo. 44, 47, 409 P.2d 517, 518 (1966). ¶ 11 Here, plaintiffs do not assert that they attempted to re-serve the Improperly Served Defendants after the district court quashed service. See id. Nor do they explain how this court has jurisdiction to review the order quashing service, given our well-established jurisprudence that such an order is not “subject to review by writ of error.” Hoen, 159 Colo. at 455, 412 P.2d at 430; Cranmer, 35 Colo. App. at 372, 533 P.2d at 501 (the trial court’s order quashing 
7 service was “not an appealable order within the provisions of C.A.R. 1(a)”). ¶ 12 Accordingly, we conclude that we lack jurisdiction to review the district court’s order quashing service as to the Improperly Served Defendants and dismiss this part of the appeal. See Rea v. Corr. Corp. of Am., 2012 COA 11, ¶ 12, 272 P.3d 1143, 1146 (“[U]nless the procedural requirements of effective service of process have been satisfied, the court lacks personal jurisdiction to act with respect to [an unserved] defendant at all.” (quoting Cambridge Holdings Grp., Inc. v. Fed. Ins. Co., 489 F.3d 1356, 1361 (D.C. Cir. 2007))). B. Dismissal Orders 1. Senate Sergeant-at-Arms Defendants ¶ 13 In their answer brief, the Senate Sergeant-at-Arms Defendants (Lombardi, Flora, and Abad) argue that this court “need not address any alleged arguments against [them]” because plaintiffs’ amended opening brief (1) presents “only bald factual or legal assertions without argument or development”; (2) “rarely or never cites any portion of the trial court record”; (3) is “difficult or impossible to navigate, especially because it is not organized in a fashion at all 
8 married to the trial court’s reasoning”; (4) “does little or nothing to address the trial court’s reasoning with respect to the Sergeant-At-
Arms”; and (5) “only quote[s] a portion of the trial court’s reasoning and, even then, [does] not cite any law or authority contrary to the authority cited by the trial court.” We agree. ¶ 14 “The appellate rules are not mere technicalities, but are designed to facilitate appellate review.” Cikraji v. Snowberger, 2015 COA 66, ¶ 10, 410 P.3d 573, 576. We recognize that “[p]leadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer.” Jones v. Williams, 2019 CO 61, ¶ 5, 443 P.3d 56, 58. However, plaintiffs must still comply with C.A.R. 28. Finegold v. Clarke, 713 P.2d 401, 403 (Colo. App. 1985). ¶ 15 First, in violation of C.A.R. 28(a)(5), plaintiffs’ amended opening brief is devoid of any citations to the record. Apart from several points at which plaintiffs allegedly quote a ruling by the district court (with no citation to the record), they do not specify the 
9 underlying court order to which they refer.
3 See id. Plaintiffs’ failure to comply with these rules significantly impedes our ability to trace their arguments to a particular finding or ruling by the district court, or to a specific claim against a specific defendant. ¶ 16 Second, in violation of C.A.R. 28(a)(7), plaintiffs’ amended opening brief lacks statements of preservation, standards of review, or — with few exceptions — applicable headings.
4 ¶ 17 Third, the amended opening brief fails to provide “clear and concise discussion[s] of the grounds upon which [plaintiffs rely] in seeking a reversal or modification of the judgment or the correction of adverse findings, orders, or rulings of the lower court.” C.A.R. 28(a)(7)(B). Plaintiffs’ amended opening brief refers only passingly and conclusively to the inapplicability of governmental immunity 3 As discussed, the district court issued three dismissal orders separately addressing the motions to dismiss by the three different groups of defendants — the State Patrol Defendants, the Sergeant-
at-Arms Defendants, and Markwell — and quashed service as to some of the defendants. Plaintiffs do not distinguish among these orders in making their arguments. 4 While plaintiffs added several headings in response to this court’s order striking the initial opening brief, the headings are largely unrelated to the discussions they contain and do not aid us in tracing plaintiffs’ arguments to any specific ruling as to any specific claim. 
10 laws, violations of their asserted constitutional and statutory “right to serve lawsuits,” and a general failure to train law enforcement officers “in laws basic to the happenings of the State Capitol.” It does not provide coherent legal arguments as to why the district court erred by dismissing each claim under Rules 12(b)(1) and 12(b)(5). Rather, plaintiffs’ briefs largely consist of sweeping and inflammatory accusations that the district court’s legal analyses and conclusions constitute “perjury”; that various state institutions are corrupt; that the “government is just a racketeering agency” or a “crime syndicate”; and that opposing counsel “knowingly lied for the purpose of destroying rights.” They also repeatedly refer to other alleged incidents unrelated to the factual allegations in this case. ¶ 18 “Such rhetoric hinders the court in deciding the merits of the appeal . . . .” Martin v. Essrig, 277 P.3d 857, 860 (Colo. App. 2011) (dismissing the appeal because the appellant’s briefs did not “coherently explain why the district court erred: the analysis is obscured by irrelevant digressions, lack of structure, and use of a rhetorical style that is verbose, derogatory, and sarcastic”). Moreover, “[i]t is not this court’s function to speculate as to what a party’s argument might be.” Gravina Siding & Windows Co. v. 
11 Gravina, 2022 COA 50, ¶ 71, 516 P.3d 37, 50 (quoting People v. Palacios, 2018 COA 6M, ¶ 29, 419 P.3d 1014, 1019). Nor may we make or develop a party’s argument when that party has not endeavored to do so itself. Id.; see People v. Hicks, 262 P.3d 916, 920 (Colo. App. 2011) (declining to address the appellant’s contention “because [the] defendant has neither articulated a cogent argument for review nor provided supporting legal authority”). ¶ 19 We thus affirm the district court’s order as to the Senate Sergeant-at-Arms Defendants on these grounds.
5 2. State Patrol Defendants ¶ 20 The district court dismissed plaintiffs’ claims as to the State Patrol Defendants (Holmes, Johnson, and the Colorado State Patrol) for lack of subject matter jurisdiction, C.R.C.P. 12(b)(1), and failure to state a plausible claim for relief, C.R.C.P. 12(b)(5). Plaintiffs, as we understand their arguments, contend that the district court erred by doing so. We disagree. 5 We do not address whether plaintiffs’ noncompliance with the appellate rules requires the same result as to the other defendants because none of the other defendants argued as much in their respective answer briefs. 
12 a. Standard of Review ¶ 21 We review de novo a district court’s order granting a motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5). Colo. Ethics Watch v. Senate Majority Fund, LLC, 2012 CO 12, ¶ 16, 269 P.3d 1248, 1253. In doing so, we must accept all averments of material fact as true and view the allegations in the light most favorable to plaintiffs. Lobato v. State, 218 P.3d 358, 367 (Colo. 2009). Because plaintiffs appear pro se, “we liberally construe [their] filings while applying the same law and procedural rules applicable to a party represented by counsel.” Gandy v. Williams, 2019 COA 118, ¶ 8, 461 P.3d 575, 580. Accordingly, we give effect to the substance, rather than the form, of their pleadings. See People v. Cali, 2020 CO 20, ¶ 34, 459 P.3d 516, 522. However, we may not rewrite their pleadings or advocate on their behalf. See id. ¶ 22 To survive a motion to dismiss for failure to state a claim, a complaint must include factual allegations sufficient to raise a right to relief “above the speculative level” and provide plausible grounds for relief. Warne v. Hall, 2016 CO 50, ¶ 9, 373 P.3d 588, 591 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); accord Houser v. CenturyLink, Inc., 2022 COA 37, ¶ 11, 513 P.3d 
13 395, 399. Mere “‘labels and conclusions’ or ‘a formulaic recitation of the elements of a cause of action will not do.’” Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). A claim may also be dismissed under Rule 12(b)(5) if the substantive law does not support it. W. Innovations, Inc. v. Sonitrol Corp., 187 P.3d 1155, 1158 (Colo. App. 2008). ¶ 23 We review qualified immunity determinations de novo, viewing the evidence in the light most favorable to the plaintiff as the nonmoving party. Felders v. Malcom, 755 F.3d 870, 877 (10th Cir. 2014). Qualified immunity “protects government officials ‘from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.’” Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It may be claimed by a public official sued in his or her individual capacity. See Churchill v. Univ. of Colo., 2012 CO 54, ¶ 32, 285 P.3d 986, 997-98. ¶ 24 The court must dismiss an action against a defendant with qualified immunity unless the plaintiff shows that (1) the defendant violated a constitutional right and (2) the right was clearly 
14 established at the time of the violation. Pearson, 555 U.S. at 232; see Brosseau v. Haugen, 543 U.S. 194, 198 (2004). A complaint attempting to overcome a qualified immunity defense must meet the minimal standard of pleading articulated in Twombly. Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008). Thus, bare allegations that an individual defendant “knew of, condoned, and willfully and maliciously agreed” to violate a plaintiff’s rights are conclusory and therefore may not be assumed to be true. Iqbal, 556 U.S. at 680-81. ¶ 25 Last, we may affirm the court’s dismissal for any reason supported by the record, even one not considered by the district court. Steamboat Springs Rental & Leasing, Inc. v. City & Cnty. of Denver, 15 P.3d 785, 786 (Colo. App. 2000). b. Statutory Right to Serve Process ¶ 26 We conclude that plaintiffs’ claim that the State Patrol Defendants violated their right under section 13-1-125, C.R.S. 2023, to serve process on state legislators in the Senate and House chambers fails to state a plausible claim for relief. Sonitrol Corp., 187 P.3d at 1158 (a claim may be dismissed under Rule 12(b)(5) if the substantive law does not support it). 
15 ¶ 27 “The law does not supply a remedy for every wrong, and the courts may redress a right abridged or a duty breached only if the plaintiff has standing — the right to raise a legal argument or claim.” City of Arvada ex rel. Arvada Police Dep’t v. Denver Health & Hosp. Auth., 2017 CO 97, ¶ 18, 403 P.3d 609, 613. “When a statute does not specify what constitutes an actionable injury, we look to the law of implied private rights of action to determine whether the statute might still create a claim conferring standing.” Id. at ¶ 21, 403 P.3d at 613. ¶ 28 In their amended opening brief, plaintiffs argue: Colorado Rules of Civil Procedure imply the right of service of process by allowing anyone over 18 to perform the right. It is not a privilege for a select few. It is a right afforded to all. Without this right, the courts could not function. Why is a court committing perjury to remove a right demanded by Court rules? C.R.S. § 13-1-125(3) states very clearly that service of process is an explicit right that cannot be limited or affected. ¶ 29 However, the statute’s reference to process service under the procedural rules as a “right” is not dispositive as to whether plaintiffs have an actionable claim for relief, under the statute or procedural rules in a civil suit based on alleged obstacles to serving 
16 process.
6 See City of Arvada, ¶¶ 18, 20, 403 P.3d at 613. Rather, if the statute “‘is totally silent on the matter of remedy,’ then the court ‘must determine whether a private civil remedy reasonably may be implied.’” Id. at ¶ 26, 403 P.3d at 614 (quoting Allstate Ins. Co. v. Parfrey, 830 P.2d 905, 910 (Colo. 1992)). Plaintiffs offer no cogent, nonconclusory argument to that end. Instead, they argue that “[t]here is no doubt that the General Assembly created a right of action of service of process as all citizens can become the long arm of the Court through this statute.” Because this argument does not establish a plausible claim for relief, we conclude that the district court did not err by dismissing plaintiffs’ statutory claims against the State Patrol Defendants. c. First Amendment Right to Serve Process ¶ 30 Plaintiffs’ claims against the State Patrol Defendants for violating their right to petition the government for grievances under the First Amendment also fails under C.R.C.P. 12(b)(5). 6 We also note that, counter to plaintiffs’ assertion, the statute does not say that serving process “is an explicit right that cannot be limited or affected.” Instead, it says, “Nothing in this section shall limit or affect the right to serve any process as prescribed by the Colorado rules of civil procedure.” § 13-1-125(3), C.R.S. 2023. 
17 ¶ 31 The federal civil rights statute, 42 U.S.C. § 1983, allows a party to bring a cause of action for an alleged violation of federally guaranteed constitutional rights. N. Colo. Med. Ctr., Inc. v. Nicholas, 27 P.3d 828, 834 (Colo. 2001); see 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must show that “the defendant, under color of state law, deprived the plaintiff of a right secured by the Constitution and laws of the United States.” Jaffe v. City & Cnty. of Denver, 15 P.3d 806, 811 (Colo. App. 2000). However, neither a state, nor an “arm of the state,” Churchill, ¶ 33, 285 P.3d at 998, nor a state official in his or her official capacity can be liable for damages under § 1983 because the Supreme Court has concluded that they are not “persons” under that statute. Will v. Mich. Dep’t of State Police, 491 U.S. 58, 71 (1989). i. Personal Capacity ¶ 32 In their motion to dismiss, the State Patrol Defendants asserted a qualified immunity defense as to plaintiffs’ claims of violations of federal constitutional provisions. They reassert that argument on appeal. ¶ 33 To the extent that plaintiffs sued Holmes and Johnson for damages in their individual capacities, they do not point to 
18 anywhere in the record where they argued that Holmes or Johnson was not protected from a suit for damages in his individual capacity by the qualified immunity doctrine.
7 ¶ 34 To show that qualified immunity did not apply to Holmes and Johnson, plaintiffs were required to establish that (1) these defendants violated a constitutional right and (2) the right was clearly established at the time of the violation. See Pearson, 555 U.S. at 232. ¶ 35 Plaintiffs’ complaint does not plausibly allege that Holmes’ or Johnson’s conduct violated a “clearly established statutory or constitutional right[] of which a reasonable person would have known.” Id. at 231 (quoting Harlow, 457 U.S. at 818). While plaintiffs frame the “right” allegedly violated as a “right to serve lawsuits” in general, they alleged only that the named defendants prevented them from serving lawsuits on legislators on the floor of 7 The district court did not discuss qualified immunity as to Holmes or Johnson, instead finding broadly that “sovereign immunity from the suit applies to the action against Defendants Colorado State Patrol.” Again, we may affirm the court’s dismissal for any reason supported by the record, even one not considered by the district court. Steamboat Springs Rental & Leasing, Inc. v. City & Cnty. of Denver, 15 P.3d 785, 786 (Colo. App. 2000). 
19 the House and Senate.
8 Plaintiffs do not point to any legal authority suggesting that the First Amendment right to petition the government creates an unlimited right to access any person in any place to serve civil process upon that person. Thus, a statutory or First Amendment right to serve process at the time of their choosing upon legislators in restricted areas of the State Capitol Building could not have been “clearly established,” and qualified immunity shields Holmes and Johnson, in their personal capacities, against the plaintiffs’ First Amendment claims. See Pearson, 555 U.S. at 232. ii. Official Capacity and Arm of the State ¶ 36 That leaves us with the Colorado State Patrol (as an entity) and — broadly construing plaintiffs’ complaint — Holmes and Johnson in their official capacities. These defendants cannot be liable for damages under § 1983 because they are not “persons” 8 We also note that, because the complaint states that the House and Senate were “not in formal session,” it is highly questionable whether the plaintiffs actually pleaded that the alleged actions by the defendants in fact prevented them from serving the intended recipients in the first place. The complaint does not mention which legislators they were attempting to serve or whether those legislators were present in the building that day. 
20 under that statute. See Will, 491 U.S. at 71; Churchill, ¶ 33, 285 P.3d at 998; Freedom from Religion Found., Inc. v. Romer, 921 P.2d 84, 89 (Colo. App. 1996). d. Fourth Amendment Rights ¶ 37 Plaintiffs’ claims against the State Patrol Defendants for violating their Fourth Amendment right (for “illegal detainment” and “secure in their papers and person”) also fail under C.R.C.P. 12(b)(5). ¶ 38 Again, to show that Holmes and Johnson, in their personal capacities, were not entitled to qualified immunity, plaintiffs were required to establish that (1) these defendants violated a constitutional right and (2) that right was clearly established at the time of the violation. See Pearson, 555 U.S. at 232. ¶ 39 The Fourth Amendment protects individuals against unreasonable searches and seizures. Hoffman v. People, 780 P.2d 471, 473 (Colo. 1989). A “search” occurs “when the government violates a subjective expectation of privacy that society recognizes as reasonable.” People v. Tafoya, 2021 CO 62, ¶ 25, 494 P.3d 613, 618 (quoting Kyllo v. United States, 533 U.S. 27, 33 (2001), in turn quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., 
21 concurring)). A seizure of property is a “meaningful interference with an individual’s possessory interests” in the property. People v. Ortega, 34 P.3d 986, 990 (Colo. 2001) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). “Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would believe he is not free to leave if he does not comply, one cannot say that questioning results in a seizure protected by the Fourth Amendment.” People v. Paynter, 955 P.2d 68, 72 (Colo. 1998) (the defendant was not subjected to a Fourth Amendment seizure when an officer approached his vehicle and asked him for identification). ¶ 40 Plaintiffs’ complaint alleged that Johnson’s “demanding of ID’s without a crime being committed” violated plaintiffs’ Fourth Amendment right to be free from unreasonable government searches. Plaintiffs also list “Illegal Detainment/Arrest [Without] a Crime” in the caption of this claim, but it is unclear from the complaint whether plaintiffs alleged that they were formally 
22 arrested, were prevented from entering, or were asked to leave the building.
9 ¶ 41 These allegations are insufficient to render the Fourth Amendment claim plausible. They do not include allegations that Holmes or Johnson searched an area in which they had a constitutionally protected reasonable expectation of privacy. Nor do they plausibly allege that the officers’ request for their identification was “so intimidating as to demonstrate that a reasonable, innocent person would have believed he was not free to leave if he had not responded.” Id. at 73 (quoting Immigr. & Naturalization Serv. v. Delgado, 466 U.S. 210, 217 (1984)). Indeed, they alleged that they refused to show their identifications, and that they were asked to leave the building. These allegations undermine their argument. See Delgado, 466 U.S. at 216 (“[I]nterrogation relating to one’s 9 Plaintiffs alleged, somewhat contradictorily, that “Trooper Johnson . . . stated that [plaintiffs] were trespassing and demanded they leave the building”; “Both Sergeant Holmes and Trooper Johnson threatened both Mr. Irizarry and Mr. Sturgell with arresting them for harassment multiple times”; and “Mr. Sturgell and Mr. Irizarry remained under arrest and detained until Denver Police arrived.” 
23 identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.”). e. Failure to Train ¶ 42 Plaintiffs’ claims that the State Patrol Defendants are liable for failure to adequately train their employees also fail under C.R.C.P. 12(b)(5). ¶ 43 “[A] municipality’s failure to train its employees in a relevant respect must amount to ‘deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.’” Connick v. Thompson, 563 U.S. 51, 61 (2011) (alteration in original) (citation omitted). Absent a pattern of prior constitutional violations, a failure to train claim can proceed only “in a narrow range of circumstances[] [where] a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.” Bd. of Cnty. Comm’rs v. Brown, 520 U.S. 397, 409 (1997). ¶ 44 Plaintiffs do not allege a pattern of prior constitutional violations by the State Patrol Defendants, nor do they explain how their conduct was a “highly predictable consequence” of deficient 
24 training. Indeed, plaintiffs do not even identity which aspects of the officers’ training were deficient. We agree with the State Patrol Defendants that plaintiffs “are offended by the encounter they had with law enforcement . . . and merely speculate[] [that] the conduct must be the result of poor training.” Because plaintiffs’ failure to train claims against the State Patrol Defendants are insufficiently pleaded, we conclude that the district court did not abuse its discretion by dismissing them. 3. Markwell ¶ 45 Plaintiffs also named Markwell in their claim of “failure to train to protect rights” based on the second and third incidents. Their allegations, however, pertain only to the Sergeant-at-Arms Defendants — namely, that the Sergeant-at-Arms Defendants “either did not understand that process serving was a right or [were] told to disobey the laws and procedures of their duties.” Plaintiffs do not allege any acts or omissions by Markwell. Apart from naming her in their complaint, they do not reference her in their allegations, let alone allege with sufficient factual detail that she violated a cognizable right. Accordingly, the court did not abuse its discretion by dismissing plaintiffs’ claims against Markwell. 
25 4. Remaining Claims ¶ 46 Plaintiffs also argue on appeal that (1) the district court judges who dismissed their claims “have shown too extreme prejudice and bias” and “need[] to be prosecuted”; (2) the appellate rules governing the formatting and word count in appellate filings “violate free speech rights”; and (3) the chief judge of the court of appeals “must recuse himself for the harassment against the Plaintiffs in his useless ‘Order of the Court’ dated October 17, 2023.” ¶ 47 We decline to review these arguments. As for the alleged judicial misconduct, plaintiffs’ opening brief is replete with unsupported allegations and derogatory remarks directed at the judges who dismissed their claims. This sort of language has no place in an appellate brief (or any other document filed with a court). In any event, matters of judicial discipline are beyond the purview of this court. See In re Kamada, 2020 CO 83, ¶ 13, 476 P.3d 1146, 1149 (the Colorado Constitution entrusts such matters to the Colorado Commission on Judicial Discipline and, ultimately, to the supreme court). As for plaintiffs’ second and third arguments, these were not issues on which the district court ruled. “We do not consider ‘arguments never presented to, considered or 
26 ruled upon by’ the district court.” Core-Mark Midcontinent Inc. v. Sonitrol Corp., 2016 COA 22, ¶ 24, 370 P.3d 353, 359 (quoting Est. of Stevenson v. Hollywood Bar & Cafe, Inc., 832 P.2d 718, 721 n.5 (Colo. 1992)). IV. Disposition ¶ 48 The appeal is dismissed in part and the judgment is affirmed. JUDGE WELLING and JUDGE SCHOCK concur.