JUSTICE HOOD delivered the Opinion of the Court. ¶ 1 When Arvada police officers responded to a reported domestic disturbance in Terry Ross’s home, Ross slipped into a bedroom and shot himself. Severely injured but still alive, he needed immediate medical care. Officers radioed for an ambulance whose crew delivered him to Denver Health Medical Center, a public hospital. There, doctors treated Ross’s wounds as Arvada officers kept watch over him. When Ross, and later his estate, could not pay for his care, Denver Health billed Arvada nearly $30,000. The question presented is essentially whether Ar-vada must pay the tab. ¶2 The trial court and court of appeals said yes; both read Colorado’s “Treatment while in custody” statute as entitling Denver Health to relief. Relying on Poudre Valley Health Care Inc. v. City of Loveland, 85 P.3d 558 (Colo. App. 2003), the trial court decided the statute assigned police departments (or any agency that detains people) a duty to pay healthcare providers for treatment of those in custody. The court of appeals affirmed on essentially the same grounds. ¶ 3 We conclude the statute does not create any duty to a healthcare provider. We further conclude, however, that Denver Health’s claim for unjust enrichment survives. Because that claim is Contractual, we conclude the Colorado Governmental Immunity Act does not prohibit it. We therefore reverse the judgment of the court of appeals in part and remand for further proceedings consistent with this opinion. I. Facts and Procedural History ¶ 4 Investigating a reported domestic disturbance, Arvada Police Officers Lechuga and Schleser arrived at Terry Ross’s home. He allowed them inside. After some conversation, he escaped into a bedroom where, Officer Schleser worried, he may have hidden a gun. She ran after him, drew her own gun, and yelled at him to stop. Reaching the bed•room door just as it was closing, the officer saw Ross holding what she thought might be a handgun and feared he might shoot her. She fired at him. The door swung shut. When Officer Schleser reopened the door and began to explore the room, she discovered that although her shot had missed Ross, he had shot himself and was bleeding from his head. ¶ 5 Officer Schleser radioed-to say she had detained Ross and that he needed immediate medical attention for the gunshot wound. An ambulance transported Ross to Denver Health. Arvada officers accompanied him to the hospital, where they photographed and interviewed him. After Ross received treatment, an Arvada police officer remained outside the room until the end of his shift, and the Denver Sheriffs Department, as part of its.routine duty for Denver Health’s secure wing, monitored the room for the balance of Ross’s brief stay. ¶6 The bill for Ross’s care at Denver Health totaled just under $35,000. ¶ 7 About a month after he left the hospital, Ross committed suicide. When he died, he had not yet paid for his Denver Health treatment, but his estate contributed about $6,000, bringing the remaining total to about $29,000. Denver Health .then billed that amount to Arvada. ¶ 8 Arvada refused to pay, and Denver Health sued the city to recover the funds. The hospital alleged two theories of liability: First, Colorado’s “Treatment while in custody” statute, § 16-3-401, C.R.S. (2017), entitled it to recover Ross’s remaining cost of care from Arvada, and second, the common law implied a contract requiring Arvada to repay Denver Health. Arvada defended on three grounds: First, the statute did not .create a private right of action; second, it received no benefit from Denver Health to support its implied-contract claim; and third, the Colorado Governmental Immunity Act (“CGIA”), § 24-10-106(1), C.R.S. (2017), barred Denver Health’s claims because they could sound in tort. ¶ 9 The parties stipulated to a set of operative facts and . both sought summary judgment, which the trial court granted in Denver Health’s favor. The court reasoned that section 16-3-401 required Arvada to pay for Ross’s care, and that it therefore entitled Denver Health to repayment. Because the trial court resolved the claim on statutory grounds, it did not reach Denver Health’s equitable, implied-contract claim. As to Arva-da’s contention that the CGIA barred the suit, the trial court concluded otherwise, reasoning Denver Health’s claims were contractual and therefore outside the CGIA’s scope. ¶ 10 Arvada appealed. The division below, relying on Poudre Valley, concluded section 16-3-401 required Arvada to pay for Ross’s medical expenses. Because the statute imposed a duty to provide medical care, the division reasoned, it similarly imposed a duty to pay for that care. ¶ 11 The division further rejected Arvada’s arguments that the statute did not (1) express a clear intent to impose civil liability on government agencies for payment of medical care, or (2) create a.private-right of action for medical providers. Like the division in Pou-dre Valley, the division in this case reasoned that the traditional limits on court-created civil private rights of action did not apply because Denver Health did not allege a statutory breach creating damages. Instead, the court, of-appeals observed, “[T]he hospital helped Arvada fulfill its statutory obligations by providing medical treatment to a person in Arvada’s custody.” Denver Health & Hosp. Auth. v. City of Arvada ex. rel. Arvada Police Dep’t, 2016 COA 12, ¶ 36, — P.3d -. ¶ 12 As to Arvada’s contention that, irrespective of the statutory issue, the CGIA barred Denver Health’s claims, the division again disagreed. It concluded that Denver Health’s theory of liability, however characterized, sounded solely in contract—not tort—and thus the CGIA could not immunize Arvada from suit. ¶ 13 Concluding the trial court properly resolved the case in Denver Health’s favor, the division upheld that court’s grant of summary judgment. Arvada petitioned this court for certiorari. We granted the petition.[1] II. Standard of Review ¶ 14 This court reviews a grant of summary judgment de novo. W. Elk Ranch, L.L.C. v. United States, 65 P.3d 479, 481 (Colo. 2002), We also review de novo whether the CGIA bars- a particular claim because that determination raises a question of statutory construction. Robinson v. Colo. State Lottery Div., 179 P.3d 998, 1003 (Colo. 2008). III. Analysis ¶ 15 We resolve the issues raised in three steps. First, we clarify our framework' for implied-private-right-of-action analysis, and then,’ applying that framework, we conclude section 16-3-401 does not create a claim entitling Denver Health to relief. The statute does not identify a duty owed to healthcare providers, does not indicate a legislative intent to create a right of action, and does not suggest that imputing one would comport with the legislative scheme. Second, we note that although Denver Health’s . statutory claim fails, its unjust-enrichment claim remains. Third, because Denver Health’s unjust-enrichment claim sounds in contract, we conclude the CGIA presents no bar to that claim. Therefore, we reverse and remand for consideration of Denver Health’s unjust-enrichment claim. A. Section 16-3-401 Does Not Entitle Denver Health to Repayment , ¶ 16 Both the trial court and the division below concluded section 16-3-401 entitles Denver Health to collect the remaining cost of Ross’s care- from Arvada. We disagree. Our analysis, though, begins with a detour in which we explain that courts must consider whether a statute creates a private right of action as a matter of standing, and that they must apply the same analysis irrespective of whether the alleged right of action reaches a government or private defendant. Then, we outline the required analysis, apply that test, and conclude the statute does not create a private right of action. 1. Whether a Statute Creates a Private Right of Action Is a Question of Standing ¶ 17 Denver Health urges us to conclude section 16-3-401 entitles the, hospital to a judgment against Arvada without first deciding whether the statute creates a claim a court can resolve. But we cannot avoid that preliminary issue, so we take it up now. ¶ 18 The law does not supply a remedy for every wrong, and the courts may redress a right abridged or a duty breached only if the plaintiff has standing—the right to raise -a legal argument or claim. See City of Greenwood Vill. v. Petitioners for the Proposed City of Centennial, 3 P.3d 427, 436 (Colo. 2000). A court considering standing in effect asks, “Is a court the proper place to resolve this dispute?” ¶ 19 In Colorado, a plaintiff seeking to demonstrate standing must have suffered (1) an injury-in-fact to (2) a legally protected interest. Ainscough v. Owens, 90 P.3d 851, 855 (Colo. 2004) (citing Wimberly v. Ettenberg, 194 Colo. 163, 570 P.2d 535, 539 (1977)). This two-element analysis—the Wimberly test—ensures that the power to create prospective laws remains vested in the General Assembly. Id. at,856. A court can often resolve a dispute, but so too can the legislature, and safeguarding each institution’s integrity requires the judiciary to refrain from answering those questions better addressed by another branch of government. See Davis v. Passman, 442 U.S. 228, 253, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). ¶ 20 Under the Wimberly test, proving injury alone does not suffice. The plaintiff must hold a legal interest protecting against the injury alleged, and courts must therefore ask “whether the .plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation.” Ainscough, 90 P.3d at 856. Stated differently, the-court must conclude the injury is actionable. Cloverieaf Kennel Club, Inc. v. Colo, Racing Comm’n, 620 P.2d 1051, 1058 (Colo. 1980). ¶ 21 When a statute does not specify what constitutes an actionable injury, we look to the law of implied private rights of action to determine whether the statute might still create a claim conferring standing.[2] See id. We don’t often find such a claim, To the contrary, our reluctance to speak over legislative silence unites our implied-private-right-of-action opinions. ¶ -22 Making that point nearly a half-century ago, we said, “If the General Assembly has the intent that [private parties] use [a] statute as the basis for civil liability, then its expression of this intent should be loud and clear, I.e., by authorizing the remedy. This is not a subject in which we should attempt to infer such a legislative intent.’’ Quintano v. Indus. Comm’n, 178 Colo. 131, 495 P.2d 1137, 1139 (1972). More recently, we have required a “clear expression” of legislative intent before installing a private right of action in a statute otherwise silent on the matter. State v. Moldovan, 842 P.2d 220, 227 (Colo. 1992) (discussing Quintano, 495 P.2d at 1138-39 and Bd. of Cty. Comm’rs v. Moreland, 764 P.2d 812, 818-19 (Colo. 1988)). 2. The Samelmplied-Private-Right-of-Action Analysis Applies to Governmental and Non-governmental Defendants ¶ 23 We have expressed the same concerns no matter the legal theory and no matter the defendant. Although our implied-private-right-of-action cases typically concern torts, e.g., Moldovan, 842 P.2d at 226-27, we have analyzed other implied statutory claims as well, e.g., Bd. of Cty. Comm’rs v. Pfeifer, 190 Colo. 275, 546 P.2d 946, 948-49 (1976) (holding statute did not create claim to set aside improper conveyance). We similarly hesitate to imply a private right of action irrespective of whether the defendant is a state actor or a private party. See Moldovan, 842 P.2d at 226-27 (state actor); Allstate Ins. Co. v. Parfrey, 830 P.2d 905, 910 (Colo. 1992) (private party). ¶24 To be sure, some of our earlier cases suggested a two-track analysis—one for governmental defendants and another for private defendants—perhaps as the vestige of a time when sovereign immunity remained a question for the courts. But those paths have since converged. So, although in Par-frey we addressed our analysis to “nongovernmental defendants,” 830 P.2d at 911, later that year, we conducted the functional equivalent of that analysis with the state as the defendant in Moldovan, 842 P.2d at 226-27. And in Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 923 (Colo. 1997), a private-defendant case, we drew, from both our governmental- and private-defendant opinions without noting any distinction—a distinction we perceive as existing more in word than in deed. We therefore take this opportunity to make explicit the approach implicit in our opinions: The same implied-private-right-of-action analysis applies irrespective of the defendant’s governmental status.[3] .3. Under the Parfrey Test, Section 16-3-401 Does Not Create an Implied Private Right of Action ¶ 25 As with all matters of statutory interpretation, our fundamental task must be to discern and effectuate the legislature’s intent. When, as here, “a claimant alleges that a statute, ordinance, or regulation implicitly creates a private, right of action, the critical question is whether the legislature intended such a result.” Magness, 946 P.2d at 923. ¶ 26 Generally, if the legislature includes a. remedy , in the statute at issue, we will conclude it did not intend for the courts to create others.. See Parfrey, 830, P.2d at 910; Pfeifer, 546 P.2d at 948-49. But if the statute “is - totally silent on the matter of remedy,” then the court “must determine whether a private civil remedy reasonably may be implied.” Parfrey, 830 P.2d at 910. ¶27 Answering that question requires the court to examine three factors: (1) “whether the plaintiff is within the class of persons intended to be benefitted by the legislative enactment”; (2) “whether the legislature intended to create, albeit implicitly, a private right of action”; and (3) “whether an implied civil remedy would be consistent with the purposes of the legislative scheme.” Id, at 911. Only after a court has determined a 'Statute has satisfied these factors can it conclude the. legislature clearly expressed its intent to create a cause of action conferring standing on the claimant. ¶ 28 Here, the parties dispute whether we should read a private right of action into the following language:' Persons arrested or in custody shall be treated humanely and provided with adequate food, shelter, and, if required, medical treatment. Anyone receiving medical treatment while held in custody may be' assessed a medical treatment charge as provided in section 17-26-104.5, C.R.S. § 16-3-401(2). Because the statute does not already identify a remedy for breach of its provisions, we begin with the Parfrey analysis.[4] ¶ 29 The case for a claim falters from the first step: Section 16-3-401 does hot reveal legislative intent to benefit healthcare providers like -Denver Health. Instead, titled “Treatment while in , custody,” it describes the duties owed to a person in custody, medical care numbering one among several. Id. And that' section appears within a larger enactment concerning “Rights of persons in custody.” Tit. 16, art. 3, pt. 4, C.R.S. (2017). Both that section and the larger enactment focus solely on the rights and duties of a confining state - entity with respect to the person in its custody—not on the third parties who might incidentally assist a detaining government in fulfilling its statutory duties. ¶ 30 As to Parfrey’s second factor, the legislature’s silence regarding any duty owed to medical providers suggests it did not intend to create a right of action in favor of those providers. Moreover, the legislation here lacks other indicia of intent to create a private right of action. ¶ 31 In Moldovan, 842 P.2d at 221, a motorist injured after crashing into a cow on a state highway asked us to:impute a private right of action into Colorado’s Fence Law. (That law required the state highway department to erect fencing to prevent errant animals from venturing onto its roads: Id. at 225-26.) We concluded the legislature intended for the statute to create a private right of aetion against the state because (1) the state owed a duty directly to the plaintiff and (2) the legislature had waived sovereign immunity for dangerous conditions on public roads. Id. at 228. ¶ 32 Similarly, in Parfrey, 830 P.2d at 911, we concluded the legislature implicitly intended to create a private right of action for an insured against his insurance company when (1) doing so would ineentivize the insurer to perform its express statutory obligation to the insured, and (2) failing to create a cause of action would have left an insured without any of the benefits promised under the statute. ¶33 Here, at most, the legislature has chosen against extending sovereign immunity to contractual claims, See § 24-10-106(1); Colo. Dep’t of Transp. v. Brown Grp. Retail, Inc., 182 P.3d 687, 690-91 (Colo. 2008). But it has not created a duty to medical providers similar to the state’s duty to motorists in Moldovan or the insurer’s duty to thé insured in Parfrey. See § 16-3-401. ¶ 34 Furthermore, we need not find a right of action for. hospitals to ensure the detaining government fulfills its duty to supply its detainees with medical care. As Denver Health explains, federal law requires.it to treat patients needing emergency care and prevents it from asking whether or how the patient will pay. See 42 U.S.C, § 1395dd(a), (b) (2016). Finding a private right of action, then, wouldn’t change the hospital’s decision to provide care or the city’s ability to procure care in an emergency, In other, less dire situations, a government could contract with a provider for the care it must deliver—and if it opted not to pay, the case would be based on the contract, not the statute. Thus, we cannot say that -to ensure a detainee receives the care the statute promises him we must impute a private right of action for hospitals. ¶ 35 Finally, we cannot conclude that imputing a private right of action would be consistent with the purposes of the legislative scheme. The provision of section 16-3-401 at issue was introduced in the 1972 enactment of the Colorado Code of Criminal Procedure. Ch. 44, sec. 1, § 39-3-401, 1972 Colo. Sess. Laws 190, 202. The overall purpose of the Code is “to provide for the just determination of every criminal proceeding.” § 16-1-103, C.R.S. (2017). Implementing section 16-3-401 served that broad purpose by codifying the common law rule that prisoners must be cared for by the public who sanctions their detention. See, e.g., Spicer v. Williamson, 191 N.C. 487, 132 S.E. 291, 293 (1926) (“It is but just that the public be required to care for the prisoner, who cannot, by reason of the deprivation of his liberty, care for himself.”).[5] It likewise served the Code’s more specific purpose of preserving “the fundamental human rights of individuals.” § 16-1-103. These purposes don’t jibe with an intent to create a private right of action for medical providers. ¶ 36 We therefore decline to read a private right of action into section 16-3-401 and disapprove of the analysis below concluding otherwise. We similarly overrule Poudre Valley to the extent it conflicts with our conclusion here. B. Denver Health Might Still Recover on a Theory of Unjust Enrichment ¶ 37 Although we conclude that the court of appeals erred in finding section 16-3-401 creates a private right of action, Denver Health could still prevail on its implied-contrad/únjust-enrichment claim. As a judicially created, equitable cause of action, an unjust-enrichment claim does not depend on any contract, written or oral, but instead arises from a “contract implied in law.” Lewis v. Lewis, 189 P.3d 1134, 1141 (Colo. 2008) (quoting DOB Constr. Co. v. Cent. City Dev. Co., 965 P.2d 115, 119 (Colo. 1998)). To recover under an unjust-enrichment theory,, a plaintiff must prove three elements: “(1) [T]he defendant received a benefit (2) at the plaintiffs expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation.” Id. Denver Health argues that Arvada received a benefit at Denver Health’s expense because the statute obligated Arvada to provide the medical treatment that Denver Health provided to Ross. Neither the trial court nor the court of appeals reached this claim, and we decline to do so in the first instance. ¶ 38 So, the implied-contract/unjust-enrichment claim remains, but is it barred by the CGIA? We turn now to that question. C. The Colorado Governmental. Immunity Act Does Not Bar Denver Health’s Claim ¶ 39 The CGIA bars public liability for all claims for injury that lie in tort or could lie in tort, unless the claim falls within an exception to that immunity. § 24-10-106(1); Robinson, 179 P.3d at 1003. The CGIA does not, however, grant immunity to public entities for non-tort claims, including claims based on “contractual relations or a distinctly non-tortious statutorily-imposed duty.” Brown Grp., 182 P.3d at 691. ¶ 40 The key question, then, is whether the claim here lies in tort or could lie in tort. To answer it, we look first to “the nature of the injury and the relief sought” in the case at bar. Robinson, 179 P.3d at 1003. If the alleged injury requiring relief results from tortious conduct or breach of a tort duty, then, it likely falls within the CGIA, even if the claimant has. characterized its cause of action as contractual. Id. at 1003, 1005. ¶ 41 Applying these considerations to the unjust-enrichment claim discussed above, we conclude it does not and cannot lie in tort, and thus the CGIA presents no bar to suit. Arvada offers only an implausible hypothetical to support its contention that the facts here amount to a tort claim—that Denver Health could have argued Arvada misrepresented its intention to pay for Ross’s care and thereby induced the hospital to care for him. But as we observed above, federal law already required Denver Health to treat Ross. And once he arrived on the hospital steps, Arvada’s representations no' longer dictated whether Ross would receive care. Regardless, the facts do not disclosé misrepresentation. When the hospital presented an Arvada Officer with .a “Guarantee of Payment for Patient/Inmate” form, the officer signed it but noted next to the medical expenses, “suspect is responsible—he shot self.” ¶ 42 We will not shoehorn contractual facts into a tort theory. See id. at 1007 (explaining that we apply a “case-by-case analysis” to determine whether an unjust enrichment claim - could lie in tort); cf. Bd. of Cty. Comm’rs v. DeLozier, 917 P.2d 714, 717 (Colo. 1996) (holding estoppel claim could not lie in tort where “the facts that support [the] claim could not support a claim for fraud or misrepresentation”). Denver Health, by virtue of its statutory obligation, performed a service normally covered under contract. Ar-vada never promised to pay for that service, and has in fact refused to pay, but it may have received a benefit. We therefore concluded above that the law supplies a relationship that could require Arvada to compensate Denver Health for Ross’s care—a relationship we described as arising from a “contract implied in law.” Supra, maj. op. at ¶ 37. This equitable claim therefore more closely resembles one sounding in contract and cannot lie in tort. As a result, the CGIA does not stand in its way. IV. Conclusion ¶43 Colorado’s “Treatment while in custody” statute does not create a'claim a court may hear, in large part because it does not create any duty owed to a healthcare provider, much less a claim to recover for a' breach of that duty. Still, having concluded as much, we further conclude that Denver Health’s request for relief potentially finds- purchase in the equitable remedy of unjust enrichment. And because Arvada may have had a statutory duty to care for Ross that it placed on Denver Health—an institution which could not refuse the task—the district court should address whether it-would be unjust for Arvada to retain the benefit, if any, of Denver Health’s performance without paying for- it. Finally, because that remedy is contractual and could not lie in tort, we conclude the Colorado Governmental Immunity Act does not stand in its way. We therefore reverse the judgment of the court of appeals to the extent it held the statute supplied a right of action to Denver Health, and we remand for further proceedings consistent with this opinion. JUSTICE GABRIEL concurs. JUSTICE COATS concurs in the judgment in part, and JUSTICE EID joins in the concurrence in the judgment in part. JUSTICE MÁRQUEZ does not participate. . We granted review of the following issues: 1. Whether the court of appeals erred by creating a civil private right of action in the code of criminal procedure, benefitting medical providers against government entities, where no mention of any civil remedy against government exists. 2. Whether the court of appeals erred in failing to follow Colorado Supreme Court law that a.claim for unjust enrichment could lie in tort and is thereby governed by the Colorado Governmental Immunity Act. . We do not intend for this observation to cast doubt on our well-established law regarding taxpayer standing, a doctrine not implicated here. E.g., Conrad v. City and Cty. of Denver, 656 P.2d 662, 668 (Colo. 1982) (observing taxpayers enjoy an “economic interest in having their tax dollars spent in a constitutional manner” and that unconstitutional spending can therefore contribute to injury-in-fact under the Wimberly test). . Two years ago, we reached the same conclusion in Taxpayers for Public Education v. Douglas County School District, 2015 CO 50, 351 P.3d 461 (2015). The Supreme Court subsequently vacated that opinion, however, in Douglas County School District v. Taxpayers for Public Education, — U.S. -, 137 S.Ct. 2327, 198 L.Ed.2d 753 (2017). Because we perceive that decision, as unrelated to our implied-private-right-of-action analysis, and because our vacated opinion-no longer holds precedential value, we have revisited this issue and reach the same conclusion. . Although section 16-3-401(2) allows a confining entity to assess a treatment charge as provided in section 17-26-104.5, C.R.S. (2017),. that remedy concerns a duty distinct from , the one alleged here. That is, although section 17-26-104.5 plausibly places on a detainee the duty to repay a county jail for treatment the jail provided on his behalf, it does not illuminate whether the legislature intended to create (1) a duty requiring local governments to repay medical providers or (2) a remedy for the breach of that duty. . This rule has since been recognized as constitutionally required under the Eighth Amendment for convicted prisoners, Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and under the Due Process Clause for pretrial detainees, City of Revere v. Mass. Gen. Hosp, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).