1 

2026 CO 7
 Byers Peak Properties, LLC, a Colorado limited liability company; Byers Peak Downhill Properties, LLC, a Colorado limited liability company; C. Clark and Meredith C. Lipscomb, individuals; and Colorado Adventure Park, LLC, a Colorado limited liability company; Plaintiffs-Appellees v. Byers Peak Land & Cattle, LLC, a Colorado limited liability company, Defendant-Appellant and State Engineer and Division 5 Engineer, Appellees 
No. 24SA254
Supreme Court of Colorado
January 26, 2026

2

 Appeal from the District Court District Court, Water Division 5, Case No. 19CW3067 Honorable James B. Boyd, Water Judge Honorable Christopher G. Seldin, Judge. 
 Judgment Affirmed in Part and Reversed in Part 
 Attorneys for Plaintiffs-Appellees: Patrick, Miller & Noto, P.C. Kevin L. Patrick Jason M. Groves, Basalt, Colorado. 
 
3

 Campbell, Wagner and Frazier, LLC Michael O. Frazier, Greenwood Village, Colorado. 
 Attorneys for Defendant-Appellant: Fairfield and Woods, P.C. Joseph B. Dischinger Philip E. Lopez Denver, Colorado. 
 Attorneys for Appellees State Engineer and Division 5 Engineer: Philip J. Weiser, Attorney General Derek L. Turner, First Assistant Attorney General Robert Harris, Assistant Attorney General Mackenzie T. Herman, Assistant Attorney General Denver, Colorado. 
 JUSTICE GABRIEL delivered the Opinion of the Court, in which CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined. 
 en banc 
 
4

 OPINION 
 GABRIEL, JUSTICE. 
 ¶1 Defendant Byers Peak Land &Cattle, LLC appeals a judgment and injunction order issued by the water court below in favor of Plaintiffs Byers Peak Properties, LLC; Byers Peak Downhill Properties, LLC; C. Clark; Meredith C. Lipscomb; and Colorado Adventure Park, LLC. 
 ¶2 As pertinent here, the water court found that Defendant had diverted excess water that led to waste and flooding on Plaintiffs' property, thereby violating section 37-84-108, C.R.S. (2025), section 37-84-124, C.R.S. (2025), and section 37-84-125, C.R.S. (2025); trespassing and causing a nuisance on Plaintiffs' property; and warranting a declaratory judgment. The water court further found that Plaintiffs own easements in the Beaver Dam Ditch and both the upper and lower portions of the Gaskill Ditch to convey their water rights. And the water court issued an operational injunction that precluded Defendant from diverting water in excess of its decreed rights unless, among other things, it took action to ensure that no portion of any such excess diversion flowed onto Plaintiffs' property and, in free river conditions, provided Plaintiffs with forty-eight hours' prior written notice of the diversion. 
 ¶3 Defendant now appeals, raising seven issues for our consideration, namely, whether (1) the water court erred in holding that Plaintiffs had standing to bring a claim for a declaration of waste; (2) the water court erred in holding that section 
 
5

 37-84-108 creates a private right of action to bring a claim for waste under that statute; (3) the water court erred in holding that sections 37-84-124 and -125 apply to damages caused by irrigation runoff and flooding and thus erred in assessing attorney fees against Defendant pursuant to section 37-84-125; (4) the water court erred in granting Plaintiffs' trespass and nuisance claims because the evidence did not establish an increase in irrigation runoff beyond Defendant's historical easement; (5) the injunctive restrictions imposed by the water court on Defendant's free river diversions infringed on Defendant's constitutional right to divert unappropriated water; (6) the water court abused its discretion in not limiting Plaintiffs' easement in the "Lower Gaskill Ditch" to the amount of water that Plaintiffs could not otherwise irrigate with water from the Beaver Dam Ditch; and (7) the water court correctly exercised ancillary jurisdiction over issues concerning Spur Road, a road historically used to access the "Lower Gaskill Ditch." 
 ¶4 We now conclude that (1) Plaintiffs did not have standing to bring a claim for a declaration of waste; (2) section 37-84-108 does not create a private right of action for a statutory claim of waste; (3) sections 37-84-124 and -125 do not apply to injuries incurred from excess irrigation runoff or flooding and thus do not support Plaintiffs' claims here; (4) because Plaintiffs did not assert viable claims under sections 37-84-108, -124, and -125, Plaintiffs had no "water matter" 
 
6

 concerning waste or flooding before the water court and thus that court did not have ancillary jurisdiction over Plaintiffs' related claims for trespass and nuisance; (5) because the water court erred in finding for Plaintiffs on their waste and flooding claims, the court also erred in issuing the operational injunction; (6) the water court did not err in refusing to consider the extent of Plaintiffs' "Lower Gaskill Ditch" easement because the issue was not properly before the court; and (7) Defendant's question concerning Spur Road is not properly presented for our review. 
 ¶5 Accordingly, we affirm the water court's decision declining to address the extent of Plaintiffs' "Lower Gaskill Ditch" easement. We, however, reverse the water court's judgment on all issues related to the alleged waste and flooding, and we remand this case to the water court with instructions that the court (1) dismiss Plaintiffs' claims for declaration of waste; violations of sections 37-84-108, -124, and -125; trespass; nuisance; and the injunctive relief related to those claims; and (2) vacate the operational injunction. 
 I. Facts and Procedural History 
 ¶6 Byers Peak Ranch originally existed as a single property. In 1974, however, its co-owners, Aksel Nielsen and Donald K. Norgren, divided the ranch into two separate parcels, a West Ranch and an East Ranch. (Plaintiffs now own the East Ranch, and Defendant now owns the West Ranch.) At the time of the split, Nielsen 
 
7

 and Norgren granted each other reciprocal easements and thereafter continued cooperative irrigation practices as if the ranches were still a single parcel. 
 ¶7 Historically, both parcels have received water for irrigation from two ditches, the Beaver Dam Ditch and the Gaskill Ditch. St. Louis Creek is the source of water for both ditches. The two ditches run parallel to one another in a northeasterly direction over the West Ranch. The point at which the two ditches diverge is referred to as the "Turnout" because, at this point, water can also be turned out of the Gaskill Ditch and into the Beaver Dam Ditch. The portion of the Gaskill Ditch that is up-ditch from the Turnout has been referred to in this action as the "Upper Gaskill Ditch," and the segment of the Gaskill Ditch that is down-ditch from the Turnout has been referred to as the "Lower Gaskill Ditch." For convenience and consistency, we will use the same terminology. 
 ¶8 At the Turnout, the Beaver Dam Ditch continues to run northeast over the West Ranch before turning east and continuing onto the East Ranch. The Lower Gaskill Ditch diverges at the Turnout, traversing the West Ranch to the southeast. Historically, to access the Lower Gaskill Ditch, the East Ranch irrigators used a road on the West Ranch called Spur Road. 
 ¶9 The following is a map illustrating the parcels and ditches at issue, although we note that the parties dispute where the Gaskill Ditch ends. Plaintiffs assert that the Lower Gaskill Ditch eventually turns north and continues onto the East Ranch, 
 
8

 whereas Defendant asserts that the ditch terminates on the West Ranch. In including this map, we take no position on this dispute but merely intend to assist the reader in understanding the parcels and ditches at issue. 
 ¶10 Recent changes in ownership of the two ranches have led to changes in the ranches' historical cooperation. Plaintiffs acquired the East Ranch in 2007, and Defendant's predecessor-in-interest, Gold Medal Ranch, LLC ("GMR") purchased the West Ranch in 2014. Soon thereafter, litigation commenced between Plaintiffs 
 
9

 and GMR regarding the use of the shared ditches, and litigation among the parties has continued to today. 
 ¶11 Plaintiffs initiated the current action in June 2019, before final resolution of a previous litigation among the parties. Plaintiffs' complaint, as subsequently amended, asserted twelve claims for relief (the first supplemental complaint, like the initial complaint, contained two different claims denominated "Seventh Claim for Relief"). These claims all stemmed from two principal allegations, namely, that GMR had (1) impermissibly made alterations to the two ditches in violation of Roaring Fork Club, L.P. v. St. Jude's Co., 36 P.3d 1229 (Colo. 2001); and (2) as pertinent here, damaged Plaintiffs by diverting excess water resulting in the wasting of water and flooding on Plaintiffs' land. Specifically, Plaintiffs alleged that, at certain points in 2019 and 2020, GMR had diverted more water than was necessary for irrigating the West Ranch. This excess water then flowed downhill as irrigation runoff onto the East Ranch, flooding Plaintiffs' land. 
 ¶12 GMR answered Plaintiffs' complaint, generally denying liability on any of Plaintiffs' claims and asserting seven counterclaims. 
 ¶13 Plaintiffs subsequently moved for partial summary judgment, contending that GMR could not prevail on its first counterclaim, which had requested a declaratory judgment that Plaintiffs held no easement rights in the Lower Gaskill Ditch. Plaintiffs argued that an order in earlier litigation between the parties 
 
10

 barred that counterclaim under the claim preclusion doctrine. The water court, however, denied Plaintiffs' motion, observing that the judgment in the prior case had not expressly confirmed whether Plaintiffs, in fact, had an easement in the Lower Gaskill Ditch. Nor did the prior judgment address what water, if any, Plaintiffs might have had a right to transport through the Lower Gaskill Ditch. 
 ¶14 Thereafter, on the eve of trial in the present case, both parties filed additional motions. In particular, twelve days before trial, Plaintiffs filed a motion for a temporary restraining order, requesting that the court order the Gaskill Ditch headgate to be closed to prevent ongoing flooding on Plaintiffs' land. The water court issued a temporary restraining order and ordered that the associated preliminary injunction issues be heard simultaneously with the issues set for trial. 
 ¶15 Then, two days before trial, GMR filed a motion to dismiss, arguing that Plaintiffs lacked standing to bring their first four claims, which related to allegations of excess water causing waste and flooding on Plaintiffs' ranch. Because of this motion's timing, the water court declined to rule on the motion in advance of trial. 
 ¶16 The case proceeded to trial, and following the trial, but before the water court issued its decision, GMR sold the West Ranch to Defendant and moved to have Defendant substituted as the defendant in the current action. The water court granted that motion. 
 
11

 ¶17 The water court thereafter issued detailed findings of fact and conclusions of law. 
 ¶18 With respect to the ditch alterations undertaken by GMR, the water court concluded that a number of those alterations violated Roaring Fork, and the court issued injunctive relief related to those findings. 
 ¶19 With respect to the remaining issues, which addressed the matters now before us, the water court found that (1) Plaintiffs had standing to bring their claims for a declaration of waste and for the running, taking, and receipt of excess water, but only to the extent that those claims included and were based on claims that Defendant's statutory violations (i.e., violations of sections 37-84-108, -124, and -125) and wasting of water damaged Plaintiffs; (2) Plaintiffs own easements in the Lower Gaskill Ditch and the Beaver Dam Ditch (although the court did not discuss the extent of the Lower Gaskill Ditch easement); (3) GMR had diverted excess water that led to waste and flooding on Plaintiffs' land; and (4) such flooding warranted issuing the above-described operational injunction, which placed restrictions on Defendant's right to divert water in excess of its decreed rights, including during free river conditions. In light of these findings, the water court concluded that Plaintiffs had proved their first six claims for relief related to the alleged issue of waste and flooding (i.e., their claims for a declaration of waste; violations of sections 37-84-108, -124 and -125; trespass; and nuisance), and the 
 
12

 court awarded nominal damages of ten dollars and issued the above-described injunctive relief. The court further awarded Plaintiffs reasonable attorney fees for the claim brought under section 37-84-125. 
 ¶20 Defendant moved for clarification and reconsideration of several of the issues that the water court had decided. Among other things, Defendant sought clarification as to the quantity of water that Plaintiffs were entitled to divert through the Lower Gaskill Ditch. In this motion, Defendant argued that Plaintiffs' water rights should be limited to the water necessary to irrigate the 6.1 acres of Plaintiffs' land that could not be irrigated by the Beaver Dam Ditch, noting that all of Plaintiffs' other water uses are sufficiently served by the Beaver Dam Ditch. The water court ultimately declined to rule on this issue, finding that Defendant could have made this argument at trial but did not do so. 
 ¶21 Defendant now appeals. 
 II. Analysis 
 ¶22 We begin by setting forth the applicable standard of review and principles of statutory construction. We then proceed to address Defendant's issues in turn, setting forth the pertinent legal principles and then applying those principles to the matters before us. 
 
13

 A. Standard of Review and Principles of Statutory Construction 
 ¶23 We review the water court's conclusions of law de novo, but we accept the court's factual findings unless they are so clearly erroneous as to find no support in the record. In re Application for Water Rts. of Town of Firestone, 2025 CO 33, ¶ 37, 569 P.3d 89, 98. 
 ¶24 In addition, we review questions of statutory interpretation de novo. People in Int. of B.C.B., 2025 CO 28, ¶ 24, 569 P.3d 74, 79. When we interpret statutes, we seek to determine and effectuate the legislature's intent. Id. In doing so, we apply words and phrases in accordance with their plain and ordinary meanings, and we consider the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts. Id. Moreover, we will avoid constructions that would render any statutory words or phrases superfluous or that would lead to illogical or absurd results. Id. 
 ¶25 In construing a statute, we respect the legislature's choice of language. Id. at ¶ 25, 569 P.3d at 79. Accordingly, we may not add words to a statute or subtract words from it. Id. And if the statutory language is unambiguous, then we will apply it as written and need not resort to other rules of statutory construction. Id. at ¶ 26, 569 P.3d at 79. 
 
14

 B. Standing for Waste Claims 
 ¶26 Turning to the issues before us, we begin by addressing Defendant's contention that Plaintiffs lacked standing to bring a claim for a declaration of waste. We agree with Defendant. 
 ¶27 To establish standing, a plaintiff generally must show that it has suffered an injury-in-fact to a legally protected interest. League of Women Voters of Greeley, Weld Cnty., Inc. v. Bd. of Cnty. Comm'rs, 2025 CO 8, ¶ 24, 563 P.3d 1192, 1197. Similarly, to have standing to bring a declaratory judgment action, "a plaintiff must assert a legal basis on which a claim for relief can be grounded," meaning that a plaintiff "must allege an injury in fact to a legally protected or cognizable interest." Farmers Ins. Exch. v. Dist. Ct., 862 P.2d 944, 947 (Colo. 1993). 
 ¶28 Here, Defendant does not contest that Plaintiffs alleged an injury-in-fact, namely, flooding on their land caused by the wasting of water. The question is whether Plaintiffs have asserted an injury to a legally protected interest. A plaintiff sufficiently asserts an injury to a legally protected interest when it has alleged "a claim for relief under the constitution, the common law, a statute, or a rule or regulation." Ainscough v. Owens, 90 P.3d 851, 856 (Colo. 2004). Because Plaintiffs do not contend that the Colorado Constitution and the common law protect parties against the waste of water, we must determine whether Plaintiffs 
 
15

 have a statutorily protected interest sufficient to support a claim for a declaration of waste. 
 ¶29 This question requires us to consider whether section 37-84-108, the statute addressing irrigators' waste of water caused by, as alleged here, an irrigator's running of excess water, establishes the requisite legally protected interest. This, in turn, implicates the second issue that Defendant raises on appeal, namely, whether section 37-84-108 creates a private right of action for a waste claim. Defendant contends that section 37-84-108 does not provide a private right of action and that Plaintiffs therefore lack standing to bring a claim under that statute. We agree. 
 ¶30 To ascertain whether section 37-84-108 provides a private right of action for waste of water, we must first consider whether the legislature intended to create specific remedies. "Generally, if the legislature includes a remedy in the statute at issue, we will conclude it did not intend for the courts to create others." City of Arvada ex rel. Arvada Police Dep't v. Denver Health &Hosp. Auth., 2017 CO 97, ¶ 26, 403 P.3d 609, 614 (citing, among other authorities, Allstate Insurance Co. v. Parfrey, 830 P.2d 905, 910 (Colo. 1992)). Conversely, when a statute is "totally silent on the matter of remedy," we must decide whether a private civil remedy may be implied, based on the factors set forth in Parfrey, 830 P.2d at 911. City of Arvada, ¶¶ 26-27, 403 P.3d at 614-15 (quoting Parfrey, 830 P.2d at 910). 
 
16

 ¶31 Section 37-84-108(1) provides, "During the summer season a person shall not run through his or her irrigating ditch any greater quantity of water than is absolutely necessary for irrigating, domestic, and stock purposes to prevent the wasting and useless discharge and running away of water." 
 ¶32 Section 37-84-109, C.R.S. (2025), in turn, states, "Any person who willfully violates any of the provisions of sections 37-84-107 and 37-84-108, upon conviction thereof, shall be fined not less than one hundred dollars. Suits for penalties under sections 37-84-107 and 37-84-108 shall be brought in the name of the people of the state of Colorado." (Emphasis added.) 
 ¶33 Accordingly, the plain language of section 37-84-109 establishes a remedy for, at least, willful violations of section 37-84-108, and the legislature authorized the state to enforce this remedy. Notably, this remedy and the state's right to enforce it have existed since these provisions were enacted 150 years ago. Specifically, the original version of section 37-84-109 was enacted in the same legislation as the original version of section 37-84-108. See An Act to Prevent the Waste of Water During the Irrigating Season, Ch. 50, §§ 1386-87, secs. 2-3, 1876 Colo. Sess. Laws 515, 518. Thus, the state's authority to enforce the waste statute was established as the statutory remedy from the waste statute's inception. Id. 
 ¶34 Because the legislature included a remedy for waste in the statute at issue, the statute is not "totally silent on the matter of remedy." City of Arvada, ¶ 26, 
 
17

 403 P.3d at 614 (quoting Parfrey, 830 P.2d at 910). Accordingly, we conclude that the legislature did not intend for the courts to create other remedies, as Plaintiffs ask us to do. See id. 
 ¶35 Our determination in this regard is supported by other provisions in title 37, article 84 of the Colorado Revised Statutes, in which the legislature has used explicit language to clarify when a statutorily established, state-enforced remedy does not bar an additional private right of action. See, e.g., § 37-84-111, C.R.S. (2025) ("Nothing in this section . . . shall be construed to bar an action for special damages by any person who has suffered such damages by reason of any failure to comply with said sections."); see also An Act to Compel the Owners of Canals and Ditches Situated Within Cities of the First Class, or Cities Existing by Special Charter, of a Population Equal to or Exceeding Said Cities of the First Class, to Confine, Flume and Cover the Same at Their Own Expense, Sec. 3, 1887 Colo. Sess. Laws 65, 66 ("Provided, That nothing in this act shall be construed to bar an action for special damages by any person who shall have suffered such damages by reason of any failure to comply with any of the provisions of this act."). No such language exists in either section 37-84-108 or -109. 
 ¶36 Similarly, the 2015 amendments to section 37-84-108 make clear that the legislature intended to charge only the state with enforcement of that statute's provisions. For example, the legislature titled the legislation, "An Act Concerning 
 
18

 State Engineer Administration of Tailwater Ditches," suggesting that only the state had the authority to ensure compliance with the statute. Ch. 54, sec. 1, § 37-84-108, 2015 Colo. Sess. Laws 131, 131; see also Frazier v. People, 90 P.3d 807, 811 (Colo. 2004) (noting that although a statute's title is not dispositive of legislative intent, it can serve as a useful tool in construing a statute). Similarly, in that legislation, the legislature added subsection (2) to section 37-84-108, which imposed certain limitations on the state engineer's authority in administering the statute. 2015 Colo. Sess. Laws at 131. The subsection goes on to say, however, "Nothing in this section limits the state engineer's authority to administer water rights to prevent waste." Id. 
 ¶37 Explaining the reasons for these amendments, Representative Jon Becker, a sponsor of the legislation, noted in a House committee meeting that the statutory amendments were "not taking away the authority of the engineer to prevent waste out of the tail end [of a ditch], which they've always had the authority to do," but instead were clarifying the existing authority of the state water engineer in administering the waste statute. Hearing on S.B. 055 before the H. Agric., Livestock &Nat. Res. Comm., 70th Gen. Assemb., 1st Sess. (Mar. 2, 2015). All of the foregoing confirms our determination that section 37-84-108 is to be administered exclusively by the state water engineer, and not by any private party. 
 
19

 ¶38 We are not persuaded otherwise by Plaintiffs' assertion that its section 37-84-108 claim was, in actuality, a negligence per se claim. Plaintiffs did not allege in their complaint a negligence per se claim, and we cannot, on appeal, reconstitute the claims that Plaintiffs actually brought in order to save those claims. See United States v. Sineneng-Smith, 590 U.S. 371, 375-76 (2020) (noting that in our adversarial system of adjudication, courts rely on the parties to frame the issues for decision and serve as neutral arbiters of matters that the parties present). 
 ¶39 For these reasons, we conclude that section 37-84-108 does not provide a private right of action allowing Plaintiffs to bring a statutory claim for waste and, therefore, Plaintiffs have not established a legally protected interest in the waste of water. Accordingly, we further conclude that Plaintiffs lacked standing to bring a claim seeking a declaration of waste and that the water court therefore erred in finding that Plaintiffs had standing to assert both declaratory judgment and statutory claims for waste. 
 C. Sections 37-84-124 and -125 
 ¶40 Defendant next contends that the water court erred by (1) concluding that sections 37-84-124 and -125 apply to damages suffered by a landowner from irrigation runoff and flooding caused by another landowner and (2) awarding attorney fees under section 37-84-125. Again, we agree. 
 ¶41 Section 37-84-124 provides: 
 
20

 

 It is the duty of every person who is entitled to take water
 for irrigation purposes from any ditch, canal, or reservoir
 to see that he receives no more water from such ditch, canal,
 or reservoir through his headgate, or by any ways or means
 whatsoever, than the amount to which he is entitled. At all
 times, such person shall take every precaution to prevent
 more water than the amount to which he is entitled from such
 ditch, canal, or reservoir from coming upon his
 land.
 

 (Emphasis added.) 
 ¶42 Section 37-84-125, in turn, provides: 
 
 It is the duty of every such person, taking water from any
 ditch, canal, or reservoir, to be used for irrigation
 purposes, on finding that he is receiving more water from
 such ditch, canal, or reservoir . . . immediately to take
 steps to prevent his further receiving more water
 from such ditch, canal, or reservoir than the amount to which
 he is entitled. If knowingly he permits such extra
 water to come upon his land from such ditch, canal,
 or reservoir, and does not immediately notify the owners of
 such ditch or take steps to prevent its further flowing upon
 his land, he shall be liable to any person, company,
 or corporation who may be injured by such extra appropriation
 of water, for the actual damage sustained by the party
 aggrieved. The damages shall be adjudged to be paid, together
 with the costs of suit, and a reasonable attorney's fee
 to be fixed by the court and taxed with the costs.
 
 (Emphases added.) 
 ¶43 As Defendant contends, the plain language of section 37-84-124 concerns the infringement of another's water rights by taking water in excess of one's own rights on one's own land. See § 37-84-124 (establishing that an irrigator must take precautions to prevent more water than he is entitled to "from coming upon his land") (emphasis added). The statutory language does not concern flooding or excess runoff onto someone else's land. 
 
21

 ¶44 Similarly, section 37-84-125 addresses the duties of a person who has received more water onto their own land than that to which they were entitled. See § 37-84-125 (establishing that an irrigator who knowingly "permits such extra water to come upon his land" must "immediately notify the owners . . . or take steps to prevent its further flowing upon his land") (emphases added). Although the statute refers to others who may be injured by another's excess appropriation of water, like section 37-84-124, section 37-84-125 concerns injury related to the receipt of excess water itself (i.e., injury to another's water rights), not to flooding or the effects of the receipt of excess water on another's land. See Se. Colo. Water Conservancy Dist. v. Rich, 625 P.2d 977, 982 (Colo. 1981) (noting that sections 37-84-124 and -125 are directed at the prevention of diversions that exceed the decreed rate of diversion), overruled in part on other grounds by Santa Fe Trail Ranches Prop. Owners Ass'n v. Simpson, 990 P.2d 46, 57 (Colo. 1999). 
 ¶45 For these reasons alone, we conclude that by their plain language, sections 37-84-124 and -125 do not apply to Plaintiffs' waste and flooding claims. 
 ¶46 Even if section 37-84-125's use of the phrase "injured by such extra appropriation of water" could be deemed ambiguous, however, reference to other tools of statutory construction produces the same result. 
 ¶47 The legislation that ultimately became sections 37-84-124 and -125, enacted in 1887, was titled, "An Act to Provide for the Better Protection of Water Rights, 
 
22

 and to Declare a Liability in Damages for the Infringement Thereof," Secs. 1-2, 1887 Colo. Sess. Laws 312, 312. Although, as noted above, a statute's title is not dispositive of legislative intent, it can serve as a useful tool in construing a statute. Frazier, 90 P.3d at 811. Here, the bill's title reinforces our conclusion that the intent of sections 37-84-124 and -125 was to protect water rights. 
 ¶48 Accordingly, we conclude that sections 37-84-124 and -125 do not apply to damages incurred from irrigation runoff or flooding. As a result, we further conclude that the water court erred in finding otherwise and in then awarding attorney fees to Plaintiffs pursuant to section 37-84-125. 
 D. Trespass and Nuisance Claims 
 ¶49 Defendant further contends that the water court erred in upholding Plaintiffs' trespass and nuisance claims related to waste and flooding, because, in Defendant's view, the evidence does not support a finding that its irrigation runoff exceeded its historical easement. We, however, decline to reach (and express no opinion on) the merits of this issue because we conclude that the water court lacked ancillary jurisdiction over Plaintiffs' trespass and nuisance claims. 
 ¶50 Water courts have exclusive jurisdiction over water matters. Farmers Reservoir &Irrigation Co. v. Pub. Serv. Co. of Colo., 2022 CO 22, ¶ 61, 526 P.3d 161, 175. "Water matters involve determinations regarding the right to use water, the quantification of a water right, or a change in a previously decreed water right." 
 
23

 In re Tonko, 154 P.3d 397, 404 (Colo. 2007). In other words, "what constitutes a water matter turns on the distinction between the legal right to use of water (acquired by appropriation), and the ownership of a water right," with the former falling within the water court's exclusive jurisdiction and the latter falling within the general jurisdiction of the district courts. Crystal Lakes Water &Sewer Ass'n v. Backlund, 908 P.2d 534, 540 (Colo. 1996) (quoting Humphrey v. Sw. Dev. Co., 734 P.2d 637, 640 (Colo. 1987)). 
 ¶51 In addition to water matters, water courts' subject matter jurisdiction extends to ancillary issues presented in a case when the "resolution of those ancillary issues would directly affect the outcome of water matters within the exclusive jurisdiction of the water court." Id. at 543. Such ancillary jurisdiction promotes judicial economy because it would be absurd to require a water judge to rule in two different actions, one as a water judge and one as a district judge, to bring about a just and final result. See id. at 543-44. 
 ¶52 A water court, however, "does not have jurisdiction over real property issues only tangentially related to a water matter." Id. at 543. Likewise, a water court's ancillary jurisdiction does not extend to non-water matters when a water court dismisses all of the water matters in the case prior to trial. Glover v. Serratoga Falls LLC, 2021 CO 77, ¶ 23, 498 P.3d 1106, 1114. 
 
24

 ¶53 In this regard, Sheek v. Brooks, 2019 CO 32M, 440 P.3d 1145, is instructive. There, Sheek had challenged the validity of a water decree based on the insufficiency of Brooks's resume notice for a proposed change in a water right. Id. at ¶ 9, 440 P.3d at 1147. Sheek had also brought claims arising from the alleged invalidity of the water decree, including claims for trespass, theft, interference with a water right, and injunctive relief. Id. 
 ¶54 The water court disagreed with Sheek and found that the resume notice was sufficient and that the decree was therefore valid. Id. at ¶ 10, 440 P.3d at 1147. The court then found that Sheek's claims for trespass and injunctive relief were moot and that the court lacked ancillary jurisdiction over Sheek's remaining claims. Id. ¶55 Sheek appealed, and we ultimately concluded that the water court erred in dismissing Sheek's claims for trespass and injunctive relief as moot. Id. at ¶ 23, 440 P.3d at 1149. We determined, instead, that once the water court had found that the resume notice was sufficient and that Brooks's change of water right was valid, the court lacked ancillary jurisdiction over Sheek's remaining claims, including the claims for trespass and injunctive relief, because those claims "[did] not directly affect the outcome of the water matter and therefore may be brought only before the district court." Id. at ¶ 22, 440 P.3d at 1149. 
 ¶56 Applying the foregoing reasoning here, we note that although properly asserted claims under sections 37-84-108, -124, and -125 could constitute water 
 
25

 matters for purposes of a water court's jurisdiction, for the reasons set forth above, we have concluded that Plaintiffs did not assert viable claims under any of those provisions. As a result, we perceive no remaining "water matters" related to waste or flooding to which Plaintiffs can tether their trespass and nuisance claims. At most, these claims are "only tangentially related to a water matter." Crystal Lakes Water &Sewer Ass'n, 908 P.2d at 543. As noted above, however, this is insufficient to sustain the water court's ancillary jurisdiction. See id. 
 ¶57 In so concluding, we acknowledge that the water court exercised jurisdiction over Plaintiffs' Roaring Fork ditch alteration claims. Those claims, however, are separate and unrelated to the claims of excess irrigation runoff causing flooding. Accordingly, resolution of any purported issues of waste and flooding does not affect the outcome of the Roaring Fork claims, and Plaintiffs may not rely on the ditch alteration claims to establish ancillary jurisdiction over their trespass and nuisance claims. See Sheek, ¶ 22, 440 P.3d at 1149; Crystal Lakes Water &Sewer Ass'n, 908 P.2d at 543. 
 E. Injunctive Relief 
 ¶58 Defendant next contends that the water court's operational injunction, which, among other things, restricted Defendant's free river diversions, infringed on Defendant's constitutional right to divert unappropriated water. Colo. Const. art. XVI, § 6. The water court issued the challenged injunction, however, in 
 
26

 connection with its findings regarding Plaintiffs' waste and flooding claims. Because we have concluded that Plaintiffs did not plead viable claims under sections 37-84-108, -124, or -125 and that the water court did not have ancillary jurisdiction over Plaintiffs' related trespass and nuisance claims, we conclude that the injunction related to those claims cannot stand. As a result, we need not address Defendant's challenge to the merits of the injunction. 
 F. Lower Gaskill Ditch Easement 
 ¶59 Defendant contends that the water court abused its discretion by declining to limit Plaintiffs' use of the Lower Gaskill Ditch to the amount of water Plaintiffs cannot otherwise receive from the Beaver Dam Ditch. We are not persuaded. 
 ¶60 Assuming without deciding that the water court had jurisdiction over this issue based on its jurisdiction over Plaintiffs' Roaring Fork claims, we perceive no error in the water court's refusal to consider arguments concerning the extent of Plaintiffs' Lower Gaskill Ditch easement, when, as here, Defendant first asked the water court to quantify the amount of water that Plaintiffs may convey through the Lower Gaskill Ditch in its motion for clarification and reconsideration. As the water court observed, Defendant could, and should, have raised this issue and presented supporting evidence at trial. Proffering new legal arguments for the first time in a motion for reconsideration, however, is improper. United States v. City of Golden, 2024 CO 43M, ¶ 77, 551 P.3d 634, 654. 
 
27

 ¶61 Accordingly, we conclude that the water court did not err by refusing to consider specific limitations on Plaintiffs' use of the Lower Gaskill Ditch. 
 G. Spur Road 
 ¶62 Finally, Defendant asserts that the water court properly assumed jurisdiction over issues related to Spur Road. We decline to address this contention. 
 ¶63 Defendant asks this court to consider whether the water court correctly asserted ancillary jurisdiction over issues related to Spur Road, but Defendant believes that the water court was correct in asserting such jurisdiction. Because Defendant presents no claim of error in this issue, we perceive no viable question warranting a ruling from this court. See C.A.R. 28(a)(7)(B) (requiring an appellant to provide "a clear and concise discussion of the grounds upon which [it] relies in seeking a reversal or modification of the judgment or the correction of adverse findings, orders, or rulings of the lower court or tribunal") (emphases added). 
 III. Conclusion 
 ¶64 For the foregoing reasons, we conclude that (1) Plaintiffs lacked standing to bring a claim for a declaration of waste; (2) section 37-84-108 does not create a private right of action for a statutory claim of waste; (3) sections 37-84-124 and -125 did not afford Plaintiffs with causes of action for injuries incurred from excess irrigation runoff and flooding and thus the water court erred in awarding 
 
28

 Plaintiffs attorney fees under section 37-84-125; (4) because Plaintiffs did not assert viable claims under the foregoing water statutes, Plaintiffs had no "water matter" concerning waste or flooding before the water court and thus that court did not have ancillary jurisdiction over Plaintiffs' related claims for trespass and nuisance; (5) because the water court erred in finding for Plaintiffs on their waste and flooding claims, the water court erred in issuing the operational injunction; (6) the water court did not err in refusing to consider the extent of Plaintiffs' Lower Gaskill Ditch easement because the issue was not raised until Defendant filed a post-trial motion for clarification and reconsideration; and (7) Defendant's question concerning Spur Road is not properly presented for our review. 
 ¶65 Accordingly, we affirm the portion of the water court's order declining to consider arguments concerning the extent of Plaintiffs' Lower Gaskill Ditch easement. We, however, reverse the water court's judgment on Plaintiffs' claims for a declaration of waste; violations of sections 37-84-108, -124, and -125; trespass; nuisance; and the injunctive relief related thereto, and we remand this case to the water court with instructions that the court dismiss those claims and vacate the operational injunction. We express no opinion on the merits of any common law claims, including Plaintiffs' claims for trespass and nuisance, that Plaintiffs may choose to pursue in district court.